**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald JARRETT, Defendant-Appellant.**

No. 81–2565.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1982.

Decided April 5, 1983.

Rehearing and Rehearing En Banc
Denied June 8, 1983.

John W. Conniff, Chicago, Ill., for defendant-appellant.

William C. Bryson, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WOOD and POSNER, Circuit Judges, and DUMBAULD,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal, raising a variety of issues, arises from a jury conviction under 18 U.S.C. § 1951 ("the Hobbs Act") for the armed robbery of Alfred's Orange Blossom Jewelers ("Orange Blossom") in Oak Lawn, Illinois, on December 15, 1977. The court sentenced Jarrett as a dangerous special offender under 18 U.S.C. § 3575 to twenty-five years imprisonment.

## I. Jurisdiction

Jarrett asserts that the federal government lacked both constitutional power and statutory authority to prosecute him for the robbery of the Orange Blossom. According to Jarrett, the Hobbs Act does not permit the federal government to bring a criminal prosecution for a local robbery of a retail store upon a *de minimis* showing of effect on interstate commerce. Jarrett argues that, although the *de minimis* standard applies in extortion cases under the Hobbs Act, a more exacting standard should apply in robbery cases because of constitutional limits on the power of the federal government imposed by the reservation of power to the states to prosecute traditionally local offenses under the Tenth Amendment.[1] Jarrett points out that traditionally robbery

is a local offense whereas extortion is not. Thus, Jarrett concludes, the government failed to establish Hobbs Act jurisdiction in this case because, "of the $38,952.03 listed stolen, the Government proved that about $2,000 worth of interstate commerce was 'affected,' " a figure which establishes only a *de minimis* effect on commerce. An examination of the statutory language of the Hobbs Act, the legislative history of the Act, the cases interpreting the Act, and the cases which examine the Tenth Amendment refute this position.

■ Nothing on the face of the Hobbs Act indicates a congressional intent to define the phrase "affects commerce" more narrowly with respect to the offense of robbery as opposed to the offense of extortion.[2] To the contrary, the statute places robbery and extortion on equal ground regarding the jurisdictional requirement of affecting commerce. Such equal placement and treatment provides strong evidence that Congress intended the use of the same standard in determining effect on commerce by robbery or extortion.

■ The legislative history provides no support for Jarrett's contentions. Congress clearly intended to define as a federal crime conduct that it recognized as punishable under state law. *United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978). The legislative debates contain numerous statements to the effect that the conduct reached by the Hobbs Act was already subject to punishment under state robbery and extortion statutes.[3] Rep-

---

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

1. Although Jarrett cites to the Ninth Amendment, his argument is essentially a Tenth Amendment argument. *Cf.* J. Ely, Democracy and Distrust at 34–41 (1980). In any event, the Tenth Amendment provides a stronger argument than does the Ninth Amendment.

2. Title 18 U.S.C. § 1951 provides:
   (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or at-

tempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

    \*     \*     \*     \*     \*     \*

(3) The term "commerce" means .... commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

3. *See, e.g.,* 91 Cong.Rec. 11848 (1945) (remarks of Rep. Powell) ("Extortion and robbery are crimes in all 48 States."); *id.* at 11900 (remarks

resentatives who opposed the Hobbs Act contended that the Act interfered with the rights of the states.[4] In passing the bill, however, Congress concluded that "the States had not been effectively prosecuting robbery and extortion affecting interstate commerce and that the Federal Government had an obligation to do so." *United States v. Culbert,* 435 U.S. 371, 380, 98 S.Ct. 1112, 1117, 55 L.Ed.2d 349. Contrary to Jarrett's position, Congress perceived *both* extortion and robbery to be crimes traditionally subject to state prosecution.

Jarrett cites no case which distinguishes between the degree to which commerce must be affected for purposes of invoking federal jurisdiction for a charge of robbery and for a charge of extortion under the Hobbs Act. Courts draw no such distinction and require only a *de minimis* effect for robbery as well as extortion.

In *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960), an extortion prosecution, the Court stated that the Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." Reaffirming this view in *United States v. Culbert,* 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978) (extortion prosecution), a unanimous Supreme Court said:

the statutory language [of the Hobbs Act] sweeps within it all persons who have "in any way or degree . . . affect[ed] commerce . . . by robbery or ex-

tortion." . . . These words do not lend themselves to restrictive interpretation; as we have recognized, they "manifest . . . a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."

*Id.* at 373, 98 S.Ct. at 1113.

In a Hobbs Act robbery prosecution, *United States v. Caldarazzo,* 444 F.2d 1046 (7th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971), this circuit drew no distinction between the jurisdictional requirement for robbery and extortion cases. In *Caldarazzo,* we ruled that "[t]he Hobbs Act provides federal sanctions for *robbery* which 'in any way or degree obstructs, or delays, or affects commerce or the movement of any article or commodity in commerce.' " *Id.* at 1048–49.

■ We have previously held in an extortion case that "the commerce element [of the Hobbs Act is] satisfied where the actual impact on commerce is *de minimis,* . . . or where, in the absence of proof of an actual impact, there is a realistic probability that the extortionate transaction will have some effect on interstate commerce." *United States v. Hedman,* 630 F.2d 1184, 1195 (7th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981). Thus, in light of *Caldarazzo* and *Hedman,* we hold that the *de minimis* standard applies to robbery cases under the Hobbs Act.

The Eighth Circuit, in *Nick v. United States,* 122 F.2d 660 (8th Cir.), *cert. denied,*

of Rep. Hancock) ("robbery and extortion, two crimes which are recognized as serious in every State in the Union.... The courts of the States of this country have tried thousands of cases of robbery and extortion."); *id.* at 11901 (remarks of Rep. Gwynne) ("Of course, the state law prohibits robbery and extortion. Unquestionably State indictments could have been returned against the members of this union. The fact is, however, such indictments were not returned. It is a breakdown of law enforcement reminding the Congress of its duty to protect interstate commerce by the enactment of this bill."); *id.* at 11916 (remarks of Rep. Patrick) ("If you gentlemen can convince me that any state in the Union in which these depredations to which reference has been made has not adequate laws to convict people for

robbery and for every one of the things set out here, I will vote for this bill."); *id.* at 11906 (remarks of Mr. Robison) ("The definition of robbery and extortion set out in this bill . . . are defined in substantially the same way by the laws of every State in the Union").

4. 91 Cong.Rec. 11903 (remarks of Rep. Welch); *id.* at 11848 (remarks of Rep. Powell) ("Mr. Speaker, this is another ridiculous threat against democracy. It is the more ridiculous because it comes from the great proponent of States' rights. Extortion and robbery are crimes in all 48 States.... Why then gentlemen of the States' rights school, do we need Federal legislation.").

314 U.S. 687, 62 S.Ct. 302, 86 L.Ed. 550 (1941), addressed a Tenth Amendment attack on the validity of the Anti-Racketeering Act of 1934, ch. 569, 48 Stat. 979, 18 U.S.C. §§ 420a–420e (the predecessor to the Hobbs Act). In upholding the validity of the Act, the court, 122 F.2d at 668, explained as follows:

> The argument as to the Tenth Amendment is that this Act undertakes to invade State jurisdiction and deal with domestic violence—in short, is an attempt to exercise the police power reserved to the States under the Amendment. Clearly this is not true. The Act is an exercise of police power but it is based upon the protection of interstate commerce. If it comes within the commerce clause of the Constitution it is not open to this objection. If it does not come within the commerce clause it would be invalid whether it involved an exercise of police power or not. That the Act is within the commerce clause seems clear. . . .

Similarly, the Ninth Circuit in *Carbo v. United States,* 314 F.2d 718, 733 (9th Cir. 1963) held that the Hobbs Act is within the power of Congress and does not contravene the Tenth Amendment.[5]

■ Rather than regulate the internal functions of the states, the Hobbs Act regulates the activities of individuals.[6] Furthermore, the Hobbs Act does not *displace* the states' freedom to prosecute robberies or extortions. *See generally Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (Illinois robbery conviction fol-

lowing federal prosecution and acquittal of bank robbery presents no double jeopardy problem). The Hobbs Act presents no unconstitutional intrusion upon the sovereignty of the states and, thus, is a constitutional exercise of the commerce power.

## II. *Jury Instruction on Affecting Commerce Element*

■ Jarrett contends that the district court's instruction respecting the necessary element of interstate commerce was inadequate. According to Jarrett, the instruction which the trial court gave "improperly delegated to the jury" the question of law of whether the robbery affected interstate commerce. Thus, Jarrett argues, the trial court erred in instructing the jury in terms of the governing legal standard instead of requiring the jury to determine only the factual questions supporting a finding of effect on commerce, such as whether the Orange Blossom store received jewelry from out-of-state suppliers. Jarrett fears that the error "diverted the jury from its special office of examining the evidence, and making findings of fact only."

*United States v. Kuta,* 518 F.2d 947, 951–52 (7th Cir.) (a Hobbs Act case), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975), and *United States v. Sweet,* 548 F.2d 198, 202 (7th Cir.1977) (18 U.S.C. § 844(i)), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1978), held that the court determines as a jurisdictional matter whether interstate commerce has been af-

---

**5.** *See generally United States v. Darby,* 312 U.S. 100, 114, 61 S.Ct. 451, 457, 85 L.Ed. 609 (1941) ("It is no objection to the assertion of the power to regulate interstate commerce that its exercise is attended by the same incidents which attend the exercise of the police power of the states."); *Hoke v. United States,* 227 U.S. 308, 321, 33 S.Ct. 281, 283, 57 L.Ed. 523 (1913) (Tenth Amendment challenge to White-Slave Traffic (Mann) Act, ch. 395, 36 Stat. 825, rejected); *United States v. Staszcuk,* 517 F.2d 53, 58–59 (7th Cir.), *(en banc), cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975); *Gagliardo v. United States,* 366 F.2d 720, 722 (9th Cir.1966) (18 U.S.C. § 1464 does not violate Tenth Amendment); *Marshall v. United States,* 355 U.S. 999, 1004 (9th Cir.1966) (rejecting Tenth Amendment challenge to 18

U.S.C. § 1952), *cert. denied,* 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966); *United States v. Vignola,* 464 F.Supp. 1091, 1099 n. 23 (E.D.Pa. 1979) (unsuccessful Tenth Amendment attack of RICO, 18 U.S.C. § 1961 *et seq.*), *affirmed,* 605 F.2d 1199 (3d Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980).

**6.** *See generally United States v. Gillock,* 445 U.S. 360, 371, 100 S.Ct. 1185, 1192, 63 L.Ed.2d 454 (1980); *National League of Cities v. Usery,* 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976). *See also Equal Employment Opportunity Commission v. Wyoming,* — U.S. ——, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) (narrowly limits *Usery*).

fected and the jury finds whether the underlying facts exist. On the issue of the requisite nexus to commerce, the district judge in this case instructed the jurors:

Now, the defendant is charged, in effect, with the crime of obstructing, delaying and affecting interstate commerce by knowingly and willfully and unlawfully committing robbery. . . .

\* \* \* \* \* \*

Now, the term "commerce" means all commerce between any point in the state and any point outside thereof.

The robbery here need only have a minimal effect on commerce and it is not necessary for you to find that the defendant knew or intended that his actions would in any way affect commerce, it is only necessary that the natural consequences of the acts committed by the defendant charged in the indictment was to affect commerce in any way or degree.

Record at 367–68.[7]

In dicta, we approved a similar instruction pertaining to the element of commerce under the Hobbs Act in *United States v. Staszcuk*, 517 F.2d 53, 55 n. 6, 59 (7th Cir.) (*en banc*), *cert. denied*, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975). Moreover, no prejudice resulted to Jarrett because the underlying jurisdictional facts were not controverted. In any event, Jarrett failed

to object to the instruction at trial. Fed.R. Crim.P. 52(a).

### III. *Selective Prosecution*

Jarrett also raises a claim of selective prosecution.[8] He argues that it is not a claim which must be raised in a pretrial motion under Rule 12(b) of the Federal Rules of Criminal Procedure[9] and, therefore, that he did not waive that defense by failing to file his motion until after the completion of the trial. We disagree.

It seems clear that a request for dismissal based on selective prosecution must be raised before trial. *United States v. Taylor*, 562 F.2d 1345, 1356 (2d Cir.), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977); *United States v. Oaks*, 508 F.2d 1403, 1404–05 (9th Cir.1974), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976). In order to gain an evidentiary hearing on the issue of selective prosecution, the defendant must make a *prima facie* case based on facts "sufficient to raise a reasonable doubt about the prosecutor's purpose." *United States v. Falk*, 479 F.2d 616, 620–21 (7th Cir.1973). To do this, the defendant must show (1) that the prosecutor engaged in intentional discrimination based on an impermissible consideration, such as race, religion, or exercise of constitutional rights, *United States v. Peskin*, 527

---

**7.** In *United States v. Stubin*, 446 F.2d 457, 465 (3d Cir.1971), the Third Circuit examined a similar instruction and concluded that no plain error resulted.

**8.** Although Jarrett also claims vindictive prosecution, this claim fails since vindictive prosecution has as its basis an increase in charges or a new prosecution allegedly brought in retaliation for the exercise of constitutional rights. Here there is a single prosecution, and no increase in charges. Jarrett apparently wishes to equate his appearance as a witness before the 1978 grand jury with a criminal proceeding against him personally. This, however, is not the type of situation that falls within the perimeters of a vindictive prosecution defense. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *United States v. Wilson*, 639 F.2d 500 (9th Cir.1981).

**9.** Rule 12(b) provides:

Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceeding); or

(3) Motions to suppress evidence; or

(4) Requests for discovery under Rule 16; or

(5) Requests for a severance of charges or defendants under Rule 14.

Fed.R.Crim.P. 12(b).

F.2d 71, 86 (7th Cir.1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976), and (2) that "[w]hile others similarly situated have not generally been proceeded against because of conduct forming the basis of the charge against him, he has been singled out for prosecution." *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974). These issues bring into question the institution of the prosecution; Rule 12(b) requires such issues to be raised prior to trial. The sufficiency of these showings can, in the majority of cases, be determined without trying the general issue, which in this case was whether Jarrett was involved in the Orange Blossom robbery in violation of the Hobbs Act.

While it is suggested in *United States v. Wilson,* 639 F.2d 500, 506 (9th Cir.1981) (Real, J., concurring), that a selective prosecution defense may require a full trial in order to develop the relevant facts, this is allowed for within the pretrial motion scheme, by Rule 12(e).[10] The court may, for "good cause," defer decision of a constitutional objection if production of evidence will clarify the issue, or if factual uncertainties require "trial of any nontrivial *part* of 'the general issue . . . .' " *United States v. Barletta,* 644 F.2d 50, 57–58 (1st Cir.1981) (emphasis in original); Wright, Federal Practice and Procedure: Criminal

2d § 194. The stringency of the time requirements are similarly softened by Rule 12(f) which allows the trial judge to relieve a defendant of his waiver "for cause shown." The policies behind restricting the time for making a motion for dismissal based on selective prosecution are well served by Rule 12(b), while arguments against including selective prosecution in those motions covered by 12(b) are mitigated by the deferral and waiver relief provisions of Rules 12(e) and (f). The district court was correct in finding that Jarrett waived his selective prosecution motion by failure to file until two months after trial. We need not reach the issue of whether Jarrett could have been relieved of his waiver, since he never requested such relief from the district court.[11]

## IV. *New Trial*

Jarrett claims entitlement to a new trial, citing as grounds (1) new evidence or perjured testimony, (2) government withholding of discovery materials, (3) rebuttal on a collateral matter, and (4) admission of hearsay.[12] Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a court may grant a new trial to a defendant "if required in the interest of justice."[13] After reviewing the record and the parties' arguments, we are convinced that the interest of justice does not require a new trial.

---

10. Rule 12(e) provides:
    Ruling on Motion. A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.
    Fed.R.Crim.P. 12(e).

11. Jarrett's final argument that the government "waived" recourse to Rule 12(f) by responding on the merits to Jarrett's post-trial motion is completely without merit.

12. Jarrett also contends that because the arrangements between the government and his coconspirators, Willis and Brown, were not binding upon the government prior to testifying, Brown and Willis had a reason to lie. Although this provides an argument to present

to the jurors, it is frivolous to contend it provides a basis for a new trial.

13. Rule 33 provides:
    The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.
    Fed.R.Crim.P. 33.

Jarrett argues that "the jury never heard a critical change in the testimony of his coconspirator, Brown, which occurred subsequent to trial." Thus, the jury lacked an important factor in evaluating Brown's credibility.

At trial, Jarrett's counsel asked Brown the following questions and received the following answers:

Q. Isn't it a fact, Mr. Brown, that you didn't see Ronald Jarrett on December 15, 1977, until after the Orange Blossom robbery had been concluded and accomplished?

A. No.

Q. Isn't that a fact?

A. No, it is not.

Q. Would you lie to help yourself, sir?

A. No, I would not.

Subsequently, at the sentencing hearing, counsel asked Brown about his parole release in 1968. Brown admitted that he obtained a regular job, not because he wanted or intended to live a law-abiding life, but because it was a "necessity to get out on parole." When asked if he would lie to help himself, Brown answered, "I probably would." [14]

Contrary to Jarrett's position, we detect no serious conflict in Brown's testimony. In the first passage, Brown denied that he was lying about Jarrett's participation in the robbery in order to help himself. In the second passage, Brown admitted that he would lie on certain occasions, such as obtaining his parole release. Furthermore, during the trial, Brown admitted to lying on a subject more pertinent to the case, stating that he lied to a special agent who was investigating the robbery. The jury, therefore, heard Brown admit that he sometimes lied. Finally, accepting Jarrett's contentions arguendo, Brown's testimony at the sentencing hearing does not meet the test for granting a new trial based on newly discovered evidence, *United States v. Hedman,* 655 F.2d 813, 814 (7th Cir.1981), or based on perjured testimony, *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928).

■ Newly discovered evidence, to be grounds for a new trial, must be "*material,* and not merely *impeaching* or cumulative." *Hedman,* 655 F.2d at 814 (emphasis added). Here, Brown's testimony is merely impeaching, at best.[15]

■ For perjured testimony to form the basis for a new trial, the court must be reasonably convinced that the testimony given by a material witness is false and that the jury might have reached a different conclusion had the truth come to light. *United States v. Robinson,* 585 F.2d 274 (7th Cir.1978) (en banc), *cert. denied,* 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979); *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928). Brown's statement at the sentencing hearing does not convince us that he was lying while testifying at Jarrett's trial. Moreover, the fact that Brown lied at his parole hearing would not impress the jury to reach a different verdict because Brown already admitted to them that he lied to the special agent.

■ Jarrett claims that the government withheld certain documents necessary for the defense to impeach witnesses for the prosecution. Unfortunately, Jarrett does not describe in particulars the nature of the documents he sought to discover.[16] The district court restricted discovery to "any statements of the witnesses that

---

**14.** Counsel then asked Brown the following questions and Brown gave the following responses:

Q. Right. In fact, the more serious the matter the more you lie, isn't that right?

A. No, not really.

Q. If it means going to jail, for example, Mr. Brown, you will lie, won't you?

A. No.

Q. You won't?

A. No.

**15.** Under no stretch of the imagination can Brown be deemed to have recanted his testimony at trial. 8A Moore's Federal Practice ¶ 33.05 (2d ed.1982).

**16.** Although Jarrett's argument alludes to a curtailment on impeachment in the nature of prior convictions and misdeeds, a thorough study of the transcript of the district court proceedings reveals no such limitations.

might be usable for impeachment purposes, but not every statement made by witnesses regarding Jarrett." In clarification, the court ruled, and we agree, that simply because a witness has accused Jarrett of committing another crime does not mean the witness is biased.[17] Moreover, even if evidence that prosecution witnesses accused Jarrett of other crimes indicates bias, such evidence would be cumulative since the witnesses in question here were already accusing Jarrett of the Orange Blossom robbery. There is no indication or suggestion that the witnesses were accusing Jarrett of crimes so great in number as to connote prejudice or bias. The district court did not err, let alone abuse its discretion, by denying discovery. *See generally United States v. Watson,* 669 F.2d 1374, 1384 (11th Cir. 1982); 10 Fed.Proc., L.Ed. § 26:403 (1982).

Jarrett claims that he was improperly impeached on a collateral matter. At trial he testified that when he was visited by ATF agents in April of 1978 (about four months after the robbery), he did not have any police scanners or walkie-talkies in his home. In rebuttal, an ATF agent testified, over objection, that when he went to Jarrett's home on April 20, 1979, he found walkie-talkies.

■■■■■ A matter is collateral if the impeaching fact could not have been introduced into evidence for any purpose other than contradiction. 3 Weinstein's Evidence ¶ 607 at 607–64 (1981). We agree with Jarrett that proof of possession of walkie-talkies sixteen months after the crime was committed is collateral. However, this impeachment resulted in harmless error be-

yond a reasonable doubt. Fed.R.Crim.P. 52(a); Fed.R.Evid. 103(a); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The remoteness in time and lack of relevance should have been obvious to the jurors. Possessing walkie-talkies is hardly inflammatory.

■■■ Jarrett challenges the instruction given by the court relating to the rebuttal testimony.[18] At trial, defense counsel raised no objection; rather, counsel specifically approved the instruction. Tr. 360 ("That's fine, your Honor, that's good."). We do not consider the instruction to constitute plain error. Fed.R.Crim.P. 52; Fed.R. Evid. 103(d). Rather, it appears to be an agreed upon stipulation as to the date of the agents' visit[19] and a limiting instruction designed to eliminate any prejudice to Jarrett.

■■■ Jarrett's final ground for a new trial—improperly admitting hearsay—is frivolous, not meriting detailed discussion. According to Jarrett's contention, the district court erroneously concluded that "the Government had established a joint venture" between Rodriguez, Jarrett, Brown, and Willis such that statements made by the now deceased Rodriguez were not hearsay under Federal Rule of Evidence 801(d)(2)(E). The independent evidence of the conspiracy was more than sufficient to meet the preponderance test adopted in *United States v. Santiago,* 582 F.2d 1128, 1135 (7th Cir.1978). Willis and Brown both testified to the participation of the four in the crime, and to various admissions by Jarrett, Fed.R.Evid. 801(d)(2)(A). Their

---

17. Nor is it "evidence favorable to an accused ... material either to guilt or to punishment" which must be disclosed according to the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963).

18. The district court then instructed the jurors: Now, there was some evidence introduced that the defendant had possession of certain electronic equipment on the occasion of the visit of certain agents to his home. Defendant has denied that he had any such equipment on the occasion of the visit. The date of such visit has now been established as

having taken place in April of 1979. The evidence is to be considered by you only insofar as it may affect the credibility of the defendant. It must not be considered by you as evidence of the guilt of the defendant of the crime for which he is on trial.

19. Jarrett claims the district court erred in using the date 1979 in the instruction. However, defense counsel, in closing argument, said, "And [Jarrett] was cross-examined about something that happened in 1979, ... did he have some walkie-talkies ... in his house." Tr. 344.

testimony clearly established that Rodriguez was a coconspirator of Jarrett's within the meaning of *United States v. Gil,* 604 F.2d 546 (7th Cir.1979). Furthermore, Jarrett failed to object to the admission of Rodriguez's statements at trial.

### V. *Sentencing*

Jarrett attacks his sentence imposed under the dangerous special offender statute, 18 U.S.C. § 3575, arguing that the district court's findings concerning "dangerousness" are not supported by the record and are clearly erroneous, that the court abused its discretion in relying upon the witness Mara and the police reports for corroboration of the witness Brown's testimony, and that the court erred in not explaining "why a twenty five year sentence is required when the maximum under the statute is twenty years." We find Jarrett's claims meritless.

■ Jarrett contends the finding of dangerousness to be unsupported by the record because Brown's testimony is incredible. As the finder of fact in the sentencing hearing, however, the court was entitled to accord such weight as it saw fit to Brown's testimony. *United States v. Inendino,* 604 F.2d 458, 463–64 (7th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); *United States v. Williamson,* 567 F.2d 610, 615–16 (4th Cir.1977). Additionally, Brown's testimony was corroborated by Mara's testimony and by the police records.

■ Jarrett complains that Mara did not testify as to his personal knowledge concerning Jarrett's participation in a burglary of a Jewel grocery store and other incidents. Pursuant to Rule 1101(d)(3) of the Federal Rules of Evidence, the Rules do not apply in sentencing hearings. Thus, the Rules relating to hearsay do not apply. A judge may properly conduct a broad inquiry, "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Hearsay evidence is admissible in sentencing proceedings, including dangerous special offender proceedings. *United States v. Inendino,* 604 F.2d 458, 463 (7th Cir.), *cert. denied,* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979).

■ Similarly, regarding Jarrett's claim of lack of authentication, Rule 901 of the Federal Rules of Evidence is inapplicable. In particular, however, Jarrett points out that the FBI agent at the sentencing hearing did not make copies of the police reports himself, or compare them with the originals for accuracy. However, the copies in question were xeroxes of the original—"admissible to the same extent as an original" under Rule 1003 of the Federal Rules of Evidence, unless "a genuine question is raised as to the authenticity of the original." Fed.R. Evid. 1003. Thus, even if the Rules applied, the fact that the agent did not make the xerox or conform it with the original would make no difference. Although defense counsel called the accuracy into question in form, he did not do so in substance. Further, the district court assured Jarrett he would consider the reports "with a grain of salt," and would consider them for the "limited purpose of . . . determining whether or not there is any corroboration in this record as to the testimony given by Brown." Tr. 343–44.

■ Finally, Jarrett contends that the district court erred in failing to explain its findings concerning "dangerousness" under 18 U.S.C. § 3575(f). "A defendant is dangerous" under Section 3575(f) "if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." 18 U.S.C. § 3575(f). In *United States v. Neary,* 552 F.2d 1184, 1193 (7th Cir.), *cert. denied,* 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977), we noted that a trial court must make additional factual determinations of "special" and "dangerous" after a verdict of guilty to support the imposition of a sentence longer than the maximum sentence normally applicable to the crime. A finding of dangerousness under Section 3575(f) in-

volves an evaluation of the defendant's character and a prediction of future criminal conduct, "matters which are traditionally left to [the] wide discretion of a sentencing court." *Id.*

■ Contrary to Jarrett's contention, the district court explained its findings concerning dangerousness. The court's explanation is in accord with the construction of Section 3575(f) in *Neary.* The district court said,

> [T]his· defendant was in charge of an operation and he was the mastermind behind it, he was the organizer of it and he was the one who determined after the Orange Blossom robbery took place who was going to get what . . . .
>
> But in addition to that . . . this defendant has, as a juvenile, two arrests, on 58 different occasions he has been arrested as an adult. He had two convictions as a juvenile. There were 13 as an adult.
>
> \*      \*      \*      \*      \*      \*
>
> Now, when this information was finally collected . . . the government apparently decided . . . that *society needed some kind of better protection from the continuance of this criminal enterprise* in which the defendant was engaged and . . . the only way in which he was making his living.
>
> . . .[I]t is clear to me from this record, without any question, that this defendant has been a professional criminal all of his adult life and he qualifies beyond question as a dangerous special offender . . . .
>
> . . .[Y]our past record also indicates to me that probation and parole are terms which, apparently, have little meaning for you.

Thus, the district court found Jarrett to be dangerous to society because of his criminal life-style.[20] As the trial court judge clearly articulated the reasoning behind his decision in finding Jarrett to be dangerous, we hold that the district court did not abuse its discretion. *United States v. Madison,* 689 F.2d 1300 (7th Cir.1982).

## VI.   *Ineffective Assistance of Counsel*

■ Jarrett's final claim is that he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment. Jarrett makes numerous allegations respecting this claim, ranging from failure to timely file a motion asserting selective prosecution to failure to object to the introduction of certain evidence. As relief, Jarrett requests this court to reverse and remand for a new trial or, in the alternative, to remand for a hearing on the ineffective assistance of counsel claim.

This claim is not properly before us. Just prior to sentencing, Jarrett filed a bare motion asserting ineffective assistance of counsel. The district court denied it. At a subsequently held hearing on the motion alleging denial of effective assistance, the district court indicated that it would permit defense counsel to file affidavits in support of this motion, would allow briefing, and then would reconsider its prior ruling. In response, however, defense counsel indicated he preferred not to address the issue further, opting instead to seek collateral relief pursuant to 28 U.S.C. § 2255 if this court did not rule favorably on appeal. We believe defense counsel's original inclination is correct. As we stated in *United States v. Lang,* 644 F.2d 1232, 1240 (7th Cir.), *cert. denied,* 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981):

> First, this type of allegation is more appropriately dealt with by the district court. Procedurally, several vehicles are available, including Rule 33 of the Fed.R. Crim.P., Motion for a New Trial, or the collateral relief available to federal prisoners under 28 U.S.C. § 2255. Second, examination of the record does not provide clear evidence of the ineffective assistance of counsel, the failure alleged being those of litigation strategy. Nor do we have the impressions and findings of the district judge to guide us.

For the foregoing reasons, the judgment of the district court is affirmed.

---

**20.** Jarrett also alleges that the district court failed to comprehend the language of Section 3575(f). This contention is frivolous. The rec-ord reflects a clear understanding of the statute by the district court.