JOURNAL ENTRY AND OPINION
{¶ 1} David Dantzig ("Dantzig") appeals the jury verdict finding him guilty of violating Pepper Pike ordinances. Dantzig argues that the trial court erred in classifying the citations as first degree misdemeanors, in refusing to allow Dantzig to argue selective prosecution, in improperly instructing the jury, in refusing to allow him to argue the unconstitutionality of the ordinances, and in imposing an excessive punishment. For the following reasons, we affirm.
 {¶ 2} On May 24, 2004, Pepper Pike's building inspector cited Dantzig for parking a tow truck and trailer on residential property, other than in a garage, in violation of Pepper Pike Ordinance ("P.P.O.") 452.14(b) and (c). Dantzig pled not guilty and filed a demand for a jury trial.
 {¶ 3} Prior to trial, Dantzig filed a "Motion for Summary Judgment/Dismissal" arguing that he had been denied his right to a speedy trial. Additionally, Dantzig filed a "Prima Facie Showing of Selective Prosecution," arguing that the City of Pepper Pike ("Pepper Pike") had singled him out in issuing the citations. The record discloses no rulings on either document, but neither party disputes that both motions were denied.
 {¶ 4} The case proceeded to trial on July 29, 2004. During trial, Pepper Pike's building inspector testified that he observed Dantzig's tow truck and trailer parked on residential property. The building inspector also testified that he had given Dantzig written notice of the violations as well as time to correct each. However, Dantzig did not respond to the notices nor did he correct the violations. While presenting his defense, Dantzig took the stand and admitted that he had violated P.P.O. 452.14(c).
 {¶ 5} The jury found Dantzig guilty of both charges and the trial court sentenced him on count one to a fine of $1,000 with $900 suspended, thirty days in jail with all days suspended, and two years of inactive probation. On the second charge, the trial court sentenced Dantzig to a $1,000 fine with $750 suspended, thirty days in jail with all days suspended, and two years of inactive probation.
 {¶ 6} Dantzig appeals, raising the eight assignments of error contained in the appendix to this opinion.
 {¶ 7} In his first assignment of error, Dantzig argues that the trial court erred when it failed to grant his "Motion for Summary Judgment/Dismissal." We disagree.
 {¶ 8} The standard of review for resolving this error is discretionary. State v. Rivers (May 20, 2004), Cuyahoga App. No. 83321, 2004-Ohio-2566. Discretionary review requires that we give substantial deference to the trial court unless we determine that the court's ruling was an abuse of discretion. State v. Tankersley (1998), Cuyahoga App. Nos. 72398 and 72399. "The term abuse of discretion connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Nielsen v. Meeker (1996),112 Ohio App.3d 448, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 9} Included in Dantzig's motion is the assertion that the language quoted on both citations directly mirrors language contained in Pepper Pike's Zoning Code. Accordingly, Dantzig argues that Pepper Pike cited him pursuant to its Zoning Code, making his infractions minor misdemeanors, not first degree misdemeanors as alleged by Pepper Pike. Therefore, Pepper Pike had only forty-five days within which to bring him to trial, and because the City did not do so, the charges against him must be dismissed as violative of his right to a speedy trial.
 {¶ 10} Pepper Pike charged Dantzig with violating P.P.O. 452.14(b) and (c). Though neither (b) nor (c) contains a specific penalty for the violation, P.P.O. 408.02(a) provides that "whoever violates any provision of the Traffic Code, for which no penalty is otherwise provided, is guilty of a misdemeanor of the first degree." Because Chapter 452 is part of the Pepper Pike Traffic Code, the city properly charged Dantzig with two first degree misdemeanors.
 {¶ 11} As explained above, Dantzig argues that the language contained on each citation directly mirrors the language contained in — 1272.02(b) of the Pepper Pike Planning and Zoning Code, which classifies his infractions as minor misdemeanors. Though correct in his assertion, the citations issued to Dantzig clearly cite P.P.O. 452.14(b) and (c), as the ordinances Dantzig violated. In Cleveland v. Austin (1978),55 Ohio App.2d 215, 220, the court held that "the ticket need not contain every element of the offense in its description. It will satisfy legal requirements if it apprises the defendant of the nature of the charge together with a citation of the statute or ordinance involved." In the present case, the citations issued by Pepper Pike clearly advise Dantzig of the nature of the charges as well as provide the coordinating citation of the ordinance.
 {¶ 12} Dantzig also argues that Pepper Pike violated his right to a speedy trial. The basis for this argument is that Pepper Pike failed to bring him to trial within forty-five days, as required for a minor misdemeanor. As discussed above, Pepper Pike properly charged Dantzig with two first degree misdemeanors, which requires a defendant to be brought to trial within ninety days after the delivery of the summons. R.C. 2945.71. Pepper Pike issued Dantzig's citations on or about May 24, 2004, and trial began July 29, 2004, well within the ninety-day requirement.
 {¶ 13} Accordingly, the trial court did not err in denying Dantzig's "Motion for Summary Judgment/Dismissal." Dantzig's first assignment of error is overruled.
 {¶ 14} In his second assignment of error, Dantzig argues that the trial court erred in refusing to allow him to make arguments regarding selective prosecution. We disagree.
 {¶ 15} A defense of selective prosecution must be raised in a pretrial motion. City of Cleveland v. GSX Chemical Services of Ohio, Inc. (May 7, 1992), Cuyahoga App. No. 60512, citing United States v. Jarret (C.A.7, 1983), 705 F.2d 198. Crim.R. 12(D) requires all criminal motions to be made within thirty-five days of the arraignment or seven days before trial, whichever is earlier. Failure to raise a defense prior to trial waives the defense, unless a defendant demonstrates good cause. Crim.R. 12(H). "Absent a showing of good cause for delay by the defendant, the trial court does not have the discretion to grant the requested relief over the dictates of this clear, unambiguous procedural rule." State v.Woodruff (Oct. 11, 1989), Wayne App. No. 2466 at 4-5.
 {¶ 16} In the present case, Dantzig filed his "Prima Facie Showing of Selective Prosecution" on July 27, just two days prior to trial. Accordingly, Dantzig did not comply with the time requirements of Crim.R. 12(D). Furthermore, Dantzig's filing does not demonstrate "excusable neglect" for failure to timely file his motion. Id. at 3. Therefore, the trial court did not err in denying his "Prima Facie Showing of Selective Prosecution" as the motion did not comport with Crim.R. 12(D) and (H).
 {¶ 17} Even assuming Dantzig filed his motion in a timely manner, he failed to satisfy the requirements to prove a prima facie case of selective prosecution.
 {¶ 18} In State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, the Ohio Supreme Court set forth the following standard for analyzing a claim of selective prosecution:
"The decision whether to prosecute a criminal offense is generally left to the discretion of the prosecutor. United States v. Armstrong,517 U.S. at 464, 116 S. Ct. 1480. That discretion is, however, subject to constitutional equal-protection principles, which prohibit prosecutors from selectively prosecuting individuals based on `an unjustifiable standard such as race, religion, or other arbitrary classification.' Id., quoting Oyler v. Boles (1962), 368 U.S. 448, 456, 82 S.Ct. 501. Although a selective-prosecution claim is not a defense on the merits to the criminal charge itself, a defendant may raise it as an `independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.' State v. Getsy (1998), 84 Ohio St.3d 180,203, 1998-Ohio-533.
To support a claim of selective prosecution, `a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' State v. Flynt (1980), 63 Ohio St.2d 132, 134, quoting United States v. Berrios (C.A.2, 1974), 501 F.2d 1207, 1211."
 {¶ 19} In his "Prima Facie Showing of Selective Prosecution," Dantzig argues that he has been selectively prosecuted because he is the only one who has been prosecuted while there are countless other pickup trucks and SUVs with towing capacity in Pepper Pike. This court is of the opinion that Dantzig's "pickup truck with towing equipment" is distinguishable from other pickup trucks and SUVs. Therefore, Dantzig has failed to satisfy the first prong of Flynt. Furthermore, Dantzig fails to satisfy the second prong of Flynt because he has not proven that Pepper Pike's "selection of him for prosecution has been invidious or in bad faith." Dantzig's assertions are merely speculative and accordingly, the trial court did not err in denying him the opportunity to present evidence of selective prosecution. Dantzig's second assignment of error is overruled.
 {¶ 20} In his third, fourth, and eighth assignments of error, Dantzig argues issues concerning the alleged unconstitutionality of P.P.O. 452.14(b) and (c). Because the assigned errors address similar issues, they will be addressed contemporaneously.
 {¶ 21} In his third assignment of error, Dantzig argues that the trial court erred in prohibiting him from asking prospective jurors about their ability to be impartial regarding the constitutionality of the city's codified ordinances.
 {¶ 22} Dantzig failed to provide this court with a transcript of the voir dire proceedings and, therefore, we cannot address the merits of this assigned error. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199.
 {¶ 23} In his reply brief, Dantzig claims that the trial court "truncated" the transcript. However, Dantzig should have submitted an App.R. 9(C) statement if he knew the transcript provided was insufficient. Therefore, Dantzig's third assignment of error is overruled.
 {¶ 24} In his fourth assignment of error, Dantzig argues that the trial court erred in refusing to allow the jury to hear evidence of the unconstitutionality of the relevant ordinances. We disagree.
 {¶ 25} The admission or exclusion of evidence is a matter left to the trial court's sound discretion and, therefore, it will not be disturbed absent an abuse of discretion. State v. Lundy (1987), 41 Ohio App.3d 163,169; State v. Duncan (1978), 53 Ohio St.2d 215, 219. Abuse of discretion "connotes more than an error of law or judgment, instead requiring a finding that the trial court's judgment was unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 26} Additionally, "it is a fundamental tenet of jury trial procedure that the judge decides questions of law, and the jury, as factfinder, then decides questions of fact. Our entire system is built around this basic proposition * * *." Gallagher v. The Cleveland Browns,74 Ohio St.3d 427, 436, 1996-Ohio-320. The question of constitutionality presented by Dantzig is a question of law, not a question for the jury as argued by Dantzig. Adkins v. Stow City School District Bd. of Education
(1990), 70 Ohio App.3d 532. See, also, City of Parma v. King (Apr. 20, 2000), Cuyahoga App. Nos. 75185, 75187, and 75188. Accordingly, the trial court properly kept the issue of constitutionality from the jury. Dantzig's fourth assignment of error is overruled.
 {¶ 27} In his eighth assignment of error, Dantzig argues that P.P.O. 452.14(b) is unconstitutionally vague. We disagree.
 {¶ 28} In cases concerning unconstitutional vagueness, the burden rests with the defendant to demonstrate beyond a reasonable doubt that the statute in question is so unclear that he could not reasonably understand that it prohibited the acts in which he engaged. State v.Thomas, Cuyahoga App. No 85155, 2005-Ohio-2631 citing State v. Anderson
(1991), 57 Ohio St.3d 168, 171. "[A] law will survive a void-for-vagueness challenge if it is written so that a person of common intelligence is able to ascertain what conduct is prohibited, and if the law provides sufficient standards to prevent arbitrary and discriminatory enforcement." State v. Williams, 88 Ohio St.3d 513, 533, 2000-Ohio-428, citing Chicago v. Morales (1999), 527 U.S. 41, 56-57, 119 S.Ct. 1849.
 {¶ 29} In analyzing a statute under a void-for-vagueness challenge, a court shall adhere to the general rules of statutory construction, construing the words according to the rules of grammar and common usage.Thomas, citing State v. Chipps (May 17, 1983), Union App. Nos. 14-81-1 and 14-82-2.
 {¶ 30} In the present case, Dantzig failed to demonstrate, "beyond all reasonable doubt," that the ordinance was so unclear that it prevented him from understanding its prohibition. Dantzig argues that because the ordinance failed to define several terms, it is vague. We disagree.
 {¶ 31} The ordinance in question reads as follows: "No person shall stand or park a commercial or business vehicle in any residential driveway or on any residential premises other than storage in a private garage, except for the purpose and during the time reasonably necessary for delivering persons or property to the premises or receiving persons or property from the premises, or for rendering services to persons occupying the premises.
For purposes of this section, `commercial or business vehicle' shall include (i) any vehicle with a commercial license plate, and (ii) any vehicle designed for commercial purposes regardless of its license plate and regardless of its actual use including, but not limited to, a truck equipped with towing equipment, snow plow or salt spreader."
 {¶ 32} The ordinance above clearly defines "commercial or business vehicles" as those that have either commercial license plates, or those that are designed for commercial purposes. It is clear that a person of common intelligence, after reading this statute, would understand what commercial or business vehicles are, and accordingly, what conduct is prohibited by the ordinance.
 {¶ 33} Though it is true that any vehicle can be used for commercial purposes, the question at issue with this statute is whether the vehicle was designed for commercial purposes. Dantzig argues that all trucks and SUVs are designed for commercial purposes because all trucks and SUVs come equipped with towing equipment. While this may have been true in years past when trucks were used solely for commercial purposes, today's trucks and SUVs are used by a large percentage of the population. The trucks and SUVs of today are used to transport children, come equipped with DVD players, and provide extra room to transport more passengers. It certainly cannot be said that today's trucks, SUVs, and vans are designed solely for commercial purposes.
 {¶ 34} The vehicle owned by Dantzig is a pickup truck modified to look like, and operate as, a tow truck. The truck is equipped with a boom, saddlebags, and overhead caution lights. It is clear that any rational person observing the vehicle would find it to be a tow truck designed for commercial purposes.
 {¶ 35} Accordingly, the trial court did not err in finding P.P.O. 452.14(b) constitutional. Dantzig's eighth assignment of error is overruled.
 {¶ 36} In his fifth assignment of error, Dantzig argues that the trial court erred when it improperly instructed the jury regarding the relevant ordinance and its legal meaning. We disagree.
 {¶ 37} During his trial, Dantzig objected to the trial court's paraphrasing of P.P.O. 452.14(b) and (c). The court mollified Dantzig by pointing out that it included the exact language of sections (b) and (c) in the jury instructions along with the court's paraphrasing.
 {¶ 38} Now, Dantzig argues in his brief that the construction of P.P.O. 452.14(b) required Pepper Pike to prove both prongs of the ordinance because it contained the word "shall" and because the definition of commercial vehicle incorporated the word "and." Though he did not preserve this argument for appeal, we nonetheless disagree with his interpretation of the ordinance.
 {¶ 39} The ordinance is not drafted to require Pepper Pike to prove both subsection (i) and (ii). Instead, the ordinance provides that commercial or business vehicles include (i) and (ii). Accordingly, satisfying either (i) or (ii) is enough to prove a violation of P.P.O. 452.14(b). Therefore, Dantzig's fifth assignment of error is overruled.
 {¶ 40} In his sixth assignment of error, Dantzig argues that the trial court erred in imposing punishment in excess of that allowed by the relevant ordinances. We disagree.
 {¶ 41} The basis for Dantzig's argument is that P.P.O. 698.03(e) prohibits a court from imposing both a fine and imprisonment for a misdemeanor. While Dantzig is correct in his interpretation of P.P.O 698.03(e), this section is the penalty chapter for violations under the General Offenses Code, not the traffic code. P.P.O. 408.01 governs the penalties for misdemeanors under the city's traffic code. Subsections (b)(1) and (c)(1) provide that a misdemeanor of the first degree shall be punishable up to 180 days in jail and up to a $1,000 fine.
 {¶ 42} In the present case, the trial court sentenced Dantzig on count one to a $1,000 fine with $900 suspended, 30 days in jail with all days suspended, and two years inactive probation. On count two, the trial court sentenced Dantzig to a $1,000 fine with $750 suspended, 30 days in jail with all days suspended, and two years inactive probation. The trial court's imposed sentence comports with P.P.O. 408.01(b)(1) and (c)(1).
 {¶ 43} Additionally, Dantzig argues that Blakely v. Washington
(2004), U.S., 124 S.Ct. 2521, requires that a jury make the required findings regarding his sentence. We have recently addressed this issue in this court's en banc decision of State v. Atkins-Boozer, Cuyahoga App. No. 84151, 2005-Ohio-2666. In that case, we found that the imposition of nonminimum sentences on first-time offenders does not implicate the Sixth Amendment as construed in Blakely. Moreover, Blakely applies to felony sentences, not misdemeanor sentences.
 {¶ 44} Therefore, the trial court did not err in imposing the sentences upon Dantzig. His sixth assignment of error is overruled.
 {¶ 45} In his seventh assignment of error, Dantzig argues that P.P.O. 452.14(b) and (c) are an improper use of police power. We disagree.
 {¶ 46} Section (b) is quoted above, and section (c) provides in pertinent part:
"No person shall stand or park a recreational vehicle, trailer, or boat in any residential driveway or on any residential premises other than storage in a private garage, for more than a total of seven (7) days or any part thereof, regardless of whether the days are consecutive, during any 90-day period."
 {¶ 47} Dantzig bases his argument on the fact that the way the ordinance is drafted would negatively impact the community because all trucks, SUVs, vans, and minivans would be in violation of the ordinance. Additionally, Dantzig claims that the ordinance is based purely on aesthetic reasons and, as such, is an improper use of police power. In response, Pepper Pike contends that the ordinances are valid exercises of its police power because they are rationally related to the general welfare of the community in addition to having aesthetic purposes.
 {¶ 48} An ordinance that is rationally based on the objective of promoting health, safety, morals, or the general welfare of the community is constitutionally within the police power of a municipal government.Village of Euclid v. Ambler Realty Co. (1926), 272 U.S. 365. However, an ordinance may still be attacked as unconstitutional on its face or as applied to the person attacking the ordinance. Belden v. Union CentralLife Ins. Co. (1944), 143 Ohio St. 329. As this court stated in City ofPepper Pike v. Landskroner (1977), 53 Ohio App.2d 63, 69, "[T]he principal argument generally voiced against ordinances such as the one presently before us is that the ordinance is not based on the health, safety, morals or general welfare of the community but that its primary objective is one of aesthetic considerations and this renders the ordinance unconstitutional."
 {¶ 49} There exists a presumption of validity that attaches to an ordinance; however, this presumption is not a conclusive presumption but a rebuttable one that may be overcome by competent and relevant evidence. State, ex rel. Jackman v. Court of Common Pleas of CuyahogaCounty (1967), 9 Ohio St.2d 159; Curtiss v. Cleveland (1959),170 Ohio St. 127. A legislative enactment will not be disturbed, however, unless it is shown that the action taken by the municipality in denying the property owner the unrestricted use of his property is arbitrary, capricious, and bears no reasonable relationship to health, safety, morals, or general welfare. Ambler Realty Co., supra.
"A person wishing to attack an ordinance as unconstitutional has the burden of proof and may not rely on mere allegations or conclusions of law that the ordinance is not based on health, safety, morals or general welfare, but must introduce competent and relevant evidence to support his position. If he meets his burden and introduces sufficient evidence to overcome the presumption of regularity and constitutionality, the municipality may not merely counter with its own legal conclusions but must also produce evidence to support the validity of the ordinance on the basis of health, safety, morals or general welfare or risk that its ordinance will be declared unconstitutional." Landskroner,53 Ohio App.2d at 70.
 {¶ 50} The determination of whether an ordinance is enacted for the
 {¶ 51} principal purpose of aesthetics or for the community's general welfare depends upon the evidence presented at trial. Id. at 75. A review of the record demonstrates that Dantzig has failed to produce "competent and relevant evidence to support his position." Id. at 70. Dantzig directed his testimony at trial toward whether his vehicle was actually a "commercial vehicle" under the Pepper Pike Ordinance. Furthermore, Dantzig made only conclusory statements in support of his argument that aesthetics were Pepper Pike's purpose behind the ordinance. Accordingly, Dantzig failed to prove that the legislative objectives had no purpose outside of aesthetics.
 {¶ 52} Nonetheless, this court in Landskroner upheld a similar Pepper Pike Ordinance involving recreational vehicles.
"There is no question that if an ordinance prohibiting outside storage of recreational vehicles in a single-family neighborhood were enacted principally for aesthetic reasons, the ordinance would be invalid, but, it is noted as argued above, that when recreational vehicles are stored outside on single-family premises in a single-family neighborhood, they can become a nuisance and can have an adverse effect on the character and integrity of a single-family neighborhood[,] especially where there are many such vehicles stored. Thus, an ordinance enacted for the purpose of preserving and protecting the orderly development, the character and the integrity of a single-family neighborhood has as its general purpose that of the general welfare, even though its implementation may have an incidental or secondary aesthetic effect.
We cannot say that as a matter of law ordinances which prohibit the outside storage of recreational vehicles in single-family residential areas are unconstitutional." (Citations omitted.) Landskroner53 Ohio App.2d at 74-75.
 {¶ 53} In the present case, the purpose of P.P.O. 452.14(b) and (c), is stated in the enactment, "WHEREAS, the parking of vehicles designed for commercial use other than a garage is incompatible with the low density, spacious, and residential character of a single family residential neighborhood and would adversely affect the character and integrity of the single family residential neighborhood * * *." Therefore, this court finds no distinction between P.P.O. 452.14(b) and (c) and the ordinance previously reviewed and upheld in Landskroner.
 {¶ 54} Dantzig failed to meet his burden of proof and, therefore, his seventh assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Shaker Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., And Cooney, J., concur.
 Appendix Assignments of Error:
 "I. The trial court erred in failing to grant the defendant/appellant'smotion for summary judgment/dismissal.
 II. The trial court erred in refusing to allow defendant to makearguments regarding selective prosecution.
 III. The trial court erred in prohibiting the defendant from askingquestions during the voir dire of the jury pool regarding their abilityto be impartial in regard to the constitutionality of the relevantstatutes/ordinances.
 IV. The trial court erred in refusing to allow the jury to hearevidence of the unconstitutionality of the relevant statutes/ordinances.
 V. The trial court erred when it improperly instructed the juryregarding the relevant statute and its legal meaning.
 VI. The trial court erred in imposing punishment in excess of thatallowed by the relevant ordinances (Pepper Pike Codified Ordinances).
 VII. Pepper Pike ordinances 452.14(b) and (c) are an improper use ofpolice power.
 VIII. Pepper Pike ordinance 452.14(b) is unconstitutionally VAGUE."