City of Pepper Pike, Appellee, *v.* Landskroner, Appellant.

[Cite as Pepper Pike v. Landskroner (1977), 53 Ohio App. 2d 63.]

64

(No. 35796—Decided July 21, 1977.)

Mr. Thomas H. Baughman, for appellee.
Mr. Lawrence Landskroner, for himself.

KRENZLER, J. On May 15, 1975, Patrolman Raymond Walters of the Pepper Pike Police Department filed a sworn complaint in the Municipal Court of Shaker Heights against the defendant-appellant, Lawrence Landskroner, hereinafter referred to as the appellant, in which he alleged that on or about May 1, 1975, at 2460 Snowberry Lane in the City of Pepper Pike, Cuyahoga County, Ohio, the appellant did store a house trailer in the open and on a premise where a single-family dwelling existed in viola-

tion of Section 1143.02 of the Codified Ordinances of the city of Pepper Pike.[1]

The appellant filed a motion to quash the complaint on the basis that ordinance 1143.02 does not apply to him because it prohibits house trailers from being stored in the open on single-family premises and that his vehicle is a self-propelled motor home and not a house trailer. The appellee argues that R. C. 4501.01(J),[2] which at the time this

---

[1] The ordinance under which the appellant was charged provides as follows:

"Each single-family, duplex, and two-family dwelling shall have on its premises a private garage, sufficient in capacity for the storage at one time of at least two passenger automobiles for each dwelling unit on the premises.

"On any parcel of land of one acre or more in area, the garage space shall not exceed that necessary for the vehicles used by the families housed on such lot or parcel, including servants and farm help; and except for vehicles used in agriculture, not more than one commercial vehicle shall be stored in a private garage. No commercial vehicle or trailer, including house trailers or boats shall be stored in the open on any premises where a single-family dwelling has been erected.

"Each multiple-family and apartment dwelling shall have a private garage sufficient in capacity for the storage at one time of at least one and one-half passenger automobiles for each dwelling unit on the premises, and an additional parking space which may be outdoors for at least one-half passenger automobile for each dwelling unit. Pepper Pike, Ohio, Zoning Code, Tit. 3, §1143.02 (1976)."

[2] The definition of house trailer as contained in R. C. 4501.01 has changed at least three times to reflect changes in the type of recreational equipment being manufactured. In fact, the definition of house trailer in effect at the time of trial in the present case is no longer in effect.

Originally, under the General Code, Motor Vehicle Statute, there was no reference to house trailers or motor homes. A trailer was defined essentially as a vehicle designed to be drawn by a motor vehicle. G. C. 6290. In 1952, this same section was revised and the term house trailer was added. The definitions of trailer and house trailer as adopted at this time remained in effect through the adoption of R. C. 4501.01 and were the definitions contained in R. C. 4501.01 at the time this case was tried. These definitions were as follows:

"(I) 'Trailer' means any vehicle without motive power designed or used for carrying property or persons wholly on its own structure and for being drawn by a motor vehicle, and includes any such vehicle when formed by or operated as a combination of a semitrailer and a vehicle of the dolly type such as that commonly known as a trailer

action was brought, defined house trailers as including both nonself-propelled and self-propelled vehicles, is applicable to ordinance 1143.02.

The trial court overruled the motion to quash and held that as a matter of law the definition of house trailer contained in R. C. 4501.01(J) was applicable to the Pepper Pike ordinance.

---

dolly, and a vehicle used to transport agricultural produce or agricultural production materials between a local place of storage or supply and the farm when drawn or towed on a public road or highway at a speed greater than twenty-five miles per hour, except a house trailer.

"(J) 'House trailer' means any self-propelled and nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being used as a conveyance upon the public streets or highways."

The definition of house trailer as provided above in R. C. 4501.01(J), remained in effect until August 27, 1976, when the following definition became effective under R. C. 4501.01(L) and a new category of recreational vehicles was adopted under R. C. 4501.01(N).

"(L) 'House trailer' means any nonself-propelled vehicle so designed, constructed, reconstructed, or added to by means of accessories in such manner as will permit the use and occupancy thereof for human habitation, when connected to indicated utilities, whether resting on wheels, jacks, or other temporary foundation and used or so constructed as to permit its being conveyed upon the public streets or highways. * * *

"(N) 'Recreational vehicle' means a vehicular portable structure designed and constructed to be used as a temporary dwelling for travel, recreational, and vacation uses and being classed as follows:

"(1) 'Travel trailer' means a nonself-propelled recreational vehicle not exceeding an overall length of thirty-five feet, exclusive of bumper and tongue or coupling, and includes a tent type fold out camping trailer as defined in division (N) of section 4517.01 of the Revised Code.

"(2) 'Motor home' means a self-propelled recreational vehicle constructed with permanently installed facilities for cold storage, cooking and consuming of food, and for sleeping.

"(3) 'Truck camper' means a nonself-propelled recreational vehicle, without wheels for road use, and designed to be placed upon and attached to a motor vehicle. Truck camper does not include truck covers which consist of walls and roof but do not have floors and facilities for using same as a dwelling."

The case was tried to the court on October 16 and November 3, 1975, which on December 1, 1975, found the appellant guilty and fined him $250 and costs, with $175 of the fine suspended and placed him on inactive probation for one year.[3]

In its decision, the trial court found that the appellant was charged with a violation of Section 1143.02 of the Codified Ordinances of the City of Pepper Pike, which prohibits the storing of a commercial vehicle or trailer, including house trailers, in the open on any premises where a single-family dwelling has been erected.

The court further found that the appellant's house trailer, also described as a recreational vehicle, was for some period of time and up to the time of trial observed by the city officials standing in the open on the premises of the appellant which premises contain a single-family dwelling.

The trial court stated that the appellant's primary argument was that the ordinance was unenforceable and invalid on the basis that its purpose was based on aesthetic considerations and not related to health, safety, morals or general welfare of the community. The court found that there was no evidence adduced to substantiate that express motive or intent.

The court further held that there was a lack of evidence to overcome the presumption of the validity of the ordinance. The trial court found that Section 1143.02 of the Codified Ordinances of the city of Pepper Pike is a valid exercise of the powers of the city council and that it bears a substantial relationship to the health, safety, morals and welfare of the community.

The appellant has taken this appeal and has three assignments of error:

"I. The trial court erred in not finding Section 1143.02 of the Pepper Pike Planning & Zoning Code to be both

---

[3]For each violation or noncompliance of any of the provisions of the zoning code, Section 1133.99 of the Codified Ordinances of the city of Pepper Pike provides for a penalty of a fine of not more than $500.

on its face and as applied an unconstitutional denial of property without due process of law.

"II. The trial court erred in not finding Section 1143.02 of the city of Pepper Pike Planning and Zoning Code unconstitutionally vague in that it fails to adequately define the meaning of the term 'house trailer.'

"III. The trial court erred in not finding Section 1143.02 of the city of Pepper Pike Planning and Zoning Code unconstitutionally vague in that it fails to adequately define the meaning of the term 'store.'"

We have before us only the original papers, exhibits and docket of the journal entries. The appellant did not file a verbatim or narrative transcript of testimony nor did he file an agreed statement of evidence as provided for in App. R. 9(B), (C) and (D).

In his three assignments of error, the appellant raises three issues regarding the validity of ordinance 1143.02. The first is that the ordinance is unconstitutional on its face and as applied to the appellant because it is not based on the health, safety, morals or general welfare of the community but that its primary purpose is one of aesthetic considerations. The second is that the ordinance is unconstitutional as applied to him because it only pertains to trailers and house trailers and that the vehicle observed upon his premises is a self-propelled motor home which is not a proscribed vehicle. His third reason is that the ordinance is unconstitutionally vague because it does not properly define the term "store" and is unconstitutional as applied to the appellant because his vehicle was not *stored* on his premises.

In this case, we are dealing with a municipal ordinance that prohibits outside storage of trailers on single-family premises. Many municipalities have enacted similar ordinances which prohibit outside parking or storage of trailers and other types of recreational vehicles in residential neighborhoods. These ordinances variously pertain to different types of vehicles and equipment such as trailers, house trailers, travel trailers, campers, vans, motor homes, truck campers and others which we shall refer to collec-

tively as recreational vehicles. Some municipalities, such as Pepper Pike, permit the storage of these vehicles in a residential neighborhood if the vehicle is enclosed or screened.

These ordinances are generally enacted as a part of the zoning regulations of the municipalities. The authority for a municipal corporation to enact zoning regulations is contained in Section 3, Article XVIII of the Ohio Constitution, which provides that municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.

Zoning ordinances which in their enactment and application are rationally based on the objective of promoting the health, safety, morals or general welfare of a community are constitutionally within the police power of a municipal government. *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365; *Mobil Oil Corp.* v. *Rocky River* (1974), 38 Ohio St. 2d 23; *Pritz* v. *Messer* (1925), 112 Ohio St. 628. That a particular zoning act is based upon these legitimate purposes is usually specifically stated in the enabling legislation. Section 1131.01 of the Pepper Pike ordinances provides that city council finds that the public health, safety, convenience, comfort, prosperity and general welfare will be promoted by the regulations and restrictions enacted in the zoning code.

An ordinance may be attacked as unconstitutional upon its face or as applied to the person attacking the ordinance. *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329. The principal argument generally voiced against ordinances such as the one presently before us is that the ordinance is not based on the health, safety, morals or general welfare of the community but that its primary objective is one of aesthetic considerations and this renders the ordinance unconstitutional.

The words health and safety are easy to define. Setback requirements of buildings and the distance required between buildings are easily related to health and safety

because they provide for light, air and ventilation, prevent overcrowding and make it easier to combat fires.

The term morals is very difficult to define and in recent years has been eliminated from enabling legislation.

The concept of the general welfare, for the purpose of which the legislature may exercise its police power, is broad and inclusive. *Berman* v. *Parker* (1954), 348 U. S. 26. General welfare is a separate and distinct purpose from health and safety and is a legitimate objective of zoning.

While there is a presumption of validity that attaches to a zoning ordinance, it is not a conclusive presumption but a rebuttable presumption which may be overcome by competent and relevant evidence. *State, ex rel. Jackman,* v. *Court of Common Pleas of Cuyahoga County* (1967), 9 Ohio St. 2d 159; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127. A legislative enactment will not be disturbed, however, unless it is shown that the action taken by the municipality in denying the property owner the unrestricted use of his property is arbitrary, capricious and bears no reasonable relationship to health, safety, morals or general welfare. *Village of Euclid* v. *Ambler Realty Co., supra*; *Mobil Oil Corp.* v. *Rocky River, supra*; *Pritz* v. *Messer, supra.*

A person wishing to attack an ordinance as unconstitutional has the burden of proof and may not rely on mere allegations or conclusions of law that the ordinance is not based on health, safety, morals or general welfare, but must introduce competent and relevant evidence to support his position. If he meets his burden and introduces sufficient evidence to overcome the presumption of regularity and constitutionality, the municipality may not merely counter with its own legal conclusions but must also produce evidence to support the validity of the ordinance on the basis of health, safety, morals or general welfare or risk that its ordinance will be declared unconstitutional.

With regard to the ordinances enacted by different municipalities restricting the parking or storage of recreational vehicles on residential premises, there has been a notable lack of uniformity in the terminology and type of

regulation encompassed by the legislation, in the application and enforcement of the ordinances, and in the methods by which the ordinances are attacked by the property owners.

Some ordinances are attacked as being unconsitutional on their face and others as applied to the particular defendant. Many times owners of these vehicles do not meet their burden of presenting evidence to demonstrate that the ordinance in question is not based on health, safety or general welfare reasons. Because of this overall lack of uniformity, there occurs what appears to be inconsistent decisions from the courts.

To illustrate this point, this court has decided cases similar to the present one involving ordinances of the city of Euclid and the city of Cleveland Heights restricting the storage or parking of recreational vehicles on residential premises.

In *City of Euclid* v. *Robert M. Paul,* unreported, Eighth Appellate District, No. 33024, rendered February 14, 1974, this court upheld the validity of Euclid ordinance 1377.06 which provided in substance that no person shall park or store a trailer, auto trailer or trailer coach in a residential district unless it was parked or stored in a completely enclosed structure. We held that the ordinance was not unconstitutional on its face nor did the record support an unconstitutional application. We noted that the defendant presented no evidence showing that the legislative objectives had no purposes but aesthetic ones.

Subsequently, we decided *Euclid* v. *Fitzthum* (1976), 48 Ohio App. 2d 297, in which we held that ordinance 1377.06 was unconstitutional as applied to that defendant. This decision was based on the fact that evidence was introduced showing that enclosure of the defendant's recreational vehicle in a garage was not based on health and safety factors because such enclosure actually created health and safety dangers. The defendant in that case met his burden of challenging the ordinance as being unconstitutional as applied to him by presenting competent and relevant evidence and the city did not introduce sufficient evidence to

overcome that of the defendant. Further, there was no evidence introduced by either party with regard to the issue of general welfare as the testimony was limited to the factors of health and safety.

On July 25, 1974, we decided *City of Cleveland Hts.* v. *Antall,* unreported, No. 33364, involving ordinance 1121.-03(n)(1) and (2) of the city of Cleveland Heights, which prohibited all boats, campers, trailers and similar equipment from being stored in the open on residential property but provided that they could be stored in a garage or other accessory building. It also provided that such vehicles could be stored in open-air parking spaces located in a rear yard with adequate screening.

In *Antall,* we held that the ordinance was constitutional on the basis that there is a presumption of validity of legislative enactments, and when an ordinance is attacked as being unconstitutional the person attacking its constitutionality has the burden of proof.

In all three cases cited above the owners of the recreational vehicles raised the argument that the requirement for the enclosure was based on only aesthetic considerations and that aesthetic considerations alone are not sufficient to sustain such regulations which require an objective based on considerations of health, safety, morals or general welfare.

The issue of aesthetics is becoming more and more important and the national trend is to recognize aesthetics as a legitimate basis for the exercise of the police power. See *Berman* v. *Parker, supra.* Cases dealing with aesthetics as the basis for zoning regulations fall into three general categories. There are those cases which hold that zoning ordinances based primarily on aesthetic considerations are not valid. *E. g., Youngstown* v. *Kahn Bros. Bldg. Co.* (1925), 112 Ohio St. 654; *National Land and Invest. Co.* v. *Kohn* (1965), 419 Pa. 504, 215 A. 2d 597. Other cases hold that aesthetic considerations alone are a valid basis for the use of the police power through zoning regulations. *E. g., Rotenberg* v. *Ft. Pierce* (Fla. App. 1967), 202 So. 2d 782; *People* v. *Stover* (1963), 12 N. Y. 2d 462, 191 N. E.

2d 272, *appeal dismissed,* 375 U. S. 42. The third category of cases holds that while aesthetic considerations alone are not a valid basis for zoning regulations such ordinances based partly or incidentally on aesthetic considerations may be valid. *E. g., Phoenix* v. *Fehlner* (1961), 90 Ariz. 13, 363 P. 2d 607; *Best* v. *Zoning Board of Adjustment* (1958), 393 Pa. 106, 141 A. 2d 606; *Pritz* v. *Messer* (1925), 112 Ohio St. 628.

Ohio courts have long held that aesthetic considerations alone will not sustain the exercise of the police power in the enactment of zoning regulations but that aesthetics may properly be an incidental or secondary reason for enacting the ordinance where the primary purpose is one of health, safety, morals or the general welfare of the community. *Youngstown* v. *Kahn Bros. Bldg. Co., supra;* *Pritz* v. *Messer, supra,* at 637, 638; *Reid* v. *Board of Review* (1963), 119 Ohio App. 67, 72. See *Welch* v. *Swasey* (1909), 214 U. S. 91.

Recently, however, the Ohio Supreme Court decided *State* v *Buckley* (1968), 16 Ohio St. 2d 128, in which it made a limited exception to the rule that laws could not be based on aesthetic considerations alone. The statute involved in this case was R. C. 4737.05(B) which provides that a junk yard must be enclosed by a fence at least six feet in height and constructed of non-transparent material and maintained so as to obscure the junk in the enclosure from the ordinary view of persons passing upon the state, county and township roads in the state. The Supreme Court held that this is a valid exercise of the police power even though it is based on aesthetic reasons. The court based its decision on the fact that junk yards are patently offensive and that the requirement of a non-transparent fence was not merely a matter of taste. The Court specifically stated that its holding was not to be construed as a blanket approval of all regulations based on aesthetics.

The Court also specifically noted that the general welfare of the public includes more than public health, safety and morals, and cited *Ghaster Properties, Inc.* v.

*Preston* (1964), 176 Ohio St. 425, 438, in which Chief Justice Taft stated that in enacting legislation the General Assembly may properly give weight "to its effect in promoting the comfort, convenience and peace of mind of those who use the highway, by removing annoying intrusions upon that use."

The argument against the constitutionality and validity of ordinance 1143.02 is that the prohibition against outside storage of recreational vehicles is arbitrary, confiscatory and unreasonable because it is not related to the health, safety, morals or general welfare of the community but is based primarily on aesthetic considerations. It is also argued, in opposition to the ordinance, that a property owner has an unrestricted right to outside storage of such vehicles in a single-family residential neighborhood because these vehicles are used by families for recreation and vacations and such use is in harmony and is consistent with family life in residential neighborhoods.

The argument in favor of the validity of the ordinance is that it was enacted under the police power for the general welfare of the community because recreational vehicles stored in single-family neighborhoods can become a nuisance and can have an adverse effect on the character and integrity of single-family neighborhoods. Since the concept of general welfare applies to the entire community, it is argued that permitting outside storage of these vehicles benefits a few persons only and is not consistent with the best interests of the entire community.

It is very difficult to ignore the argument against the validity of ordinance 1143.02 because the interest in recreational vehicles is growing, and if similar ordinances are enacted by other communities, hardship and inconvenience will fall upon persons owning these vehicles.

There is no question that if an ordinance prohibiting outside storage of recreational vehicles in a single-family neighborhood were enacted principally for aesthetic reasons, the ordinance would be invalid, but, it is noted as argued above, that when recreational vehicles are stored outside on single-family premises in a single-family neigh-

borhood, they can become a nuisance and can have an adverse effect on the character and integrity of a single-family neighborhood especially where there are many such vehicles stored. Thus, an ordinance enacted for the purpose of preserving and protecting the orderly development, the character and the integrity of a single-family neighborhood has as its general purpose that of the general welfare, even though its implementation may have an incidental or secondary aesthetic effect. *Reid* v. *Board of Review, supra,* at 72.

We cannot say that as a matter of law ordinances which prohibit the outside storage of recreational vehicles in single-family residential areas are unconstitutional. See *Township of Livingston* v. *Marchev* (1964), 85 N. J. Super. 428, 205 A. 2d 65, *appeal dismissed,* 382 U. S. 201. It is important to note that this court is merely determining the issue presented in this case with regard to whether a specific ordinance of the city of Pepper Pike is constitutional. Whether or not such legislation should be enacted in a community is a question for the legislative body to determine and is not a question for the courts to decide. Under the provision of Section 3, Article XVIII of the Ohio Constitution, it is a matter within the discretion of the legislative body to enact legislation prohibiting outside storage of trailers and house trailers.

Once enacted and subsequently attacked as being unconstitutional, it becomes the function of the courts to determine whether the legislation is constitutional based on the allegations of the pleadings and the evidence presented. The determination of whether the ordinance is enacted for the principal purpose of aesthetics or for the general welfare of the community depends upon the evidence presented at the trial. Unfortunately, in the present case, we do not have a transcript of testimony to determine what evidence was presented by the appellant in support of his claim that the ordinance was enacted principally for aesthetic reasons. Consequently, the first assignment of error is not well taken.

In his second assignment of error the appellant at-

tacks ordinance 1143.02 as being unconstitutional as applied to him on the ground that he had a self-propelled motor home parked on his premises which is not included in the definition of house trailer as provided in the ordinance. The appellant contends that the ordinance only prohibits the open storage of trailers including house trailers and does not prohibit the open storage of self-propelled motor homes.

The appellee and the trial court contend that the ordinance was constitutionally applied to the appellant because the definition of house trailer contained in R. C. 4501.-01, which at the time of this action in the trial court included self-propelled and nonself-propelled vehicles equipped for human habitation, is applicable to the prohibition of ordinance 1143.02 and is binding upon the appellant.

In the present case we are dealing with a prohibited use of private property, a violation of which incurs a penalty in the form of a fine. Statutes and ordinances of a penal nature restricting the use of private property must be strictly construed against the government and in favor of the accused. *State, ex rel. Moore Oil Co.,* v. *Dauben* (1919), 99 Ohio St. 406; *Leet* v. *City of Eastgate* (1966), 7 Ohio App. 2d 218. See *Mariemont Taxi, Inc.,* v. *Cincinnati* (1954), 162 Ohio St. 163; *State* v. *Conley* (1947), 147 Ohio St. 351; *Cleveland* v. *Jorski* (1944), 142 Ohio St. 529. Such statutes and ordinances cannot be extended by construction to persons or things not within their descriptive terms, although they appear to be within the reason and spirit of the statute. See *State* v. *Meyers* (1897), 56 Ohio St. 340; *Toledo* v. *Burks* (1955), 100 Ohio App. 127.

Ordinance 1143.02 does not apply to self-propelled motor homes. Also, the definition of house trailers contained in R. C. 4501.01 does not apply to the term house trailer in ordinance 1143.02. The prohibition in ordinance 1143.02 may properly apply to the appellant's self-propelled motor home only if one or more of the following circumstances is met: if the ordinance specifically lists a self-propelled motor home as one of the proscribed vehicles or specifically defines a house trailer as including

self-propelled motor homes; if the ordinance specifically incorporates by reference the definition of house trailer contained in R. C. 4501.01(J) at the time the action was brought; or if the definition of house trailer is commonly and universally known to include self-propelled motor homes and similar types of recreational vehicles.

We note first that ordinance 1143.02 does not expressly define the term house trailer as including motor homes. Nor does it specifically prohibit motor homes from being stored on residential premises. We note also, that the ordinance does not specifically incorporate by reference the definition of house trailer contained in R. C. 4501.01 (J). See *Larkins* v. *Routson* (1927), 115 Ohio St. 639, 652.

Further, we cannnot say as a matter of law that the term house trailer is commonly and universally known to include in its definition self-propelled motor homes of the type owned by the appellant. The entire area involving the manufacture of recreational vehicles is constantly changing. New types of equipment are being marketed every day such as campers, vans, motor homes, and various types of trailers. We cannot say that any one name given to any of these vehicles is inclusive of all such vehicles. For example, an Oregon court has defined a trailer as a nonautomotive highway vehicle. *City of Astoria* v. *Nothwang* (1960), 221 Ore. 452, 351 P. 2d 688. The term trailer is also defined in Webster's Second New International Dictionary (1942) as a nonautomotive highway vehicle designed to be hauled by another vehicle.

We note also that the definition of a house trailer in the Ohio Revised Code has changed several times in the past several years as is demonstrated by the history of R. C. 4501.01.[4] This is strong support for our conclusion that the definition of house trailer is not an immutable one. At the present time, due to a recent change in R. C. 4501.-01, the Revised Code's definition of house trailer no longer includes self-propelled motor homes as it did at the time that this action was brought in the trial court. This also

[4]See note 2.

is evidence that the term house trailer is not commonly and universally understood to include self-propelled motor homes.

Absent a specific reference to motor homes in ordinance 1143.02 or a specific incorporation by reference of the former definition of house trailers contained in R. C. 4501.01, we hold that the term house trailer as contained in ordinance 1143.02 on or about May 1, 1975, did not include self-propelled motor homes. Therefore, it is our conclusion that ordinance 1143.02 is unconstitutional as applied to the appellant's self-propelled motor home. The second assignment of error is well taken.

The third assignment of error involves two issues for our determination. The first is whether ordinance 1143.02 is unconstitutionally vague on its face because it does not include a precise definition of the term "store." The second issue is whether the ordinance was unconstitutionally applied to the appellant on the ground that the city failed to present sufficient evidence that his vehicle was actually stored on his residential premises.

The word store is generally known and understood to denote the laying up or the putting away for future use of goods or items. (Webster's Second New International Dictionary [1942].) It suggests something of a semi-permanent or permanent nature rather than mere temporary placement. The word store is of such common knowledge and usage that it requires no further definition or elaboration to sustain the facial validity of ordinance 1143.02.

Whether or not the term store was properly applied to the appellant depends upon the facts and circumstances surrounding the presence of his vehicle on his property. This determination cannot be properly made by this court as the appellant failed to provide a transcript or statement of the evidence presented at the trial. Therefore, the third assignment of error is overruled.

Judgment reversed and final judgment is entered for the appellant.

*Judgment reversed.*

DAY, C. J., and KRUPANSKY, J., concur.