**NORTHEAST OHIO REGIONAL SEWER DISTRICT, Appellee,**

v.

**CITY OF BROOKLYN, Appellant.**

[Cite as *Northeast Ohio Regional Sewer Dist.*
*v. Brooklyn* (1989), 64 Ohio App.3d 57.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 55727.

Decided Sept. 5, 1989.

58

*Linda D. Cerny*, First Assistant General Counsel, for appellee.

*Thomas F. O'Malley*, Law Director, for appellant.

THOMAS J. PARRINO, Judge.

The city of Brooklyn ("city") timely appeals the judgment of the court of common pleas that Brooklyn Ordinance No. 1988–07 ("ordinance") is invalid and unconstitutional. The city raises one assignment of error.[1] It argues that there exists no conflict between the ordinance and the general laws of Ohio, specifically R.C. 2923.18 and 715.60, and that the ordinance is not an unreasonable and arbitrary exercise of its police power. We agree with the city that the general laws of Ohio do not prohibit municipalities from reasonably regulating blasting within their boundaries. However, we affirm the judgment of the court of common pleas that this ordinance, which totally bans blasting as a means of construction, is unconstitutional in that it is in conflict with the general laws of the state of Ohio and is arbitrary and unreasonable

---

1. "The judgment of the court that the city of Brooklyn Ordinance 1988–07 was invalid on the basis of its being a [sic] conflict with Ohio Revised Code Section 2923.18 and 715.60 and declaring it unconstitutional on the grounds of its being unreasonable, arbitrary and beyond the scope of municipal police power is against the manifest weight of the evidence."

and bears no substantial relationship to public health, safety or the general welfare of the community.

On February 15, 1988, the city adopted Ordinance No. 1988–07, which states in pertinent part:

"AN ORDINANCE TO ESTABLISH THE HOURS FOR SURFACE CONSTRUCTION OPERATIONS. TO PROHIBIT BLASTING AS A MEANS OF CONSTRUCTION AND TO REPEAL ORDINANCE NO. 1988–02 AND DECLARING AN EMERGENCY

"* * *

"WHEREAS, as a result of blasting operations, private residences in the City of Brooklyn have sustained extensive damage;

"NOW, THEREFORE BE IT ORDAINED BY THE CITY OF BROOKLYN:

"*SECTION I.*

"No person shall do any of the following:

"* * *

"(B) *Blasting*

"The use of Blasting as a means of construction will not be permitted in the City of Brooklyn.

"(C) This Ordinance shall only apply to construction contracts entered into on or after the effective date of this Ordinance.

"* * *

"*SECTION III.*

"EMERGENCY CLAUSE

"That this Ordinance is hereby declared to be an emergency measure dealing with the health, safety and welfare of the of the [*sic*] City; and for the further reason that noise from surface construction between 11:00 p.m. and 7:00 a.m. prevents residents from obtaining their normal rest and comfort and blasting will cause unnecessary damage to buildings and private residences, and provided it receives the affirmative vote of two-thirds (⅔) of all members elected to Council, it shall take effect and be in force immediately upon its passage and approval by the Mayor, otherwise, it shall take effect and be in force from and after the earliest date allowed by law."

On March 15, 1988, the Northeast Ohio Regional Sewer District ("Sewer District") filed a complaint for declaratory judgment, temporary restraining order, preliminary injunction, permanent injunction and other equitable relief. On March 23, 1988, after a hearing the court granted this temporary restraining order. On April 15, 1988, the court incorporated the record which was taken in reference to the temporary restraining order into its hearing on the

merits and declared Brooklyn Ordinance No. 1988–07 unconstitutional. Appellant timely appeals.

■ Section 3, Article XVIII, of the Ohio Constitution confers upon municipalities the power " * * * to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws," *Fondessy Enterprises, Inc. v. Oregon* (1986), 23 Ohio St.3d 213, 23 OBR 372, 492 N.E.2d 797, and which are rationally based on the goals of maintaining the health, safety and general welfare of the community. *Pepper Pike v. Landskroner* (1977), 53 Ohio App.2d 63, 7 O.O.3d 44, 371 N.E.2d 579, paragraph one of the syllabus. In determining whether an ordinance is in "conflict" with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa. *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, at paragraph two of the syllabus; *Fondessy, supra.*

■ The trial court found this ordinance to be in conflict with R.C. 715.60 and 2923.18. R.C. 715.60 allows any municipal corporation to " * * * regulate the transportation, keeping, and sale of gunpowder and other explosives or dangerous combustibles and materials, and provide or license magazines therefor." Since this statute does not deal with the use of explosives it cannot be said to be in conflict with the prohibition of blasting as a means of construction.

■ R.C. 2923.18 allows for the acquisition of licenses and temporary permits to use various kinds of dangerous ordnance for certain purposes, one of which is construction.[2] It specifically indicates that a "permit shall be issued * * * to * * * use dangerous ordnance * * *," however, it does not eliminate the municipality's ability to regulate this activity if it unduly

---

**2.** R.C. 2923.18 provides:

"(A) Upon application to the sheriff of the county or safety director or police chief of the municipality where the applicant resides or has his principal place of business, and upon payment of the fee specified in division (B) of this section, a license or temporary permit shall be issued to qualified applicants to acquire, possess, carry, or use dangerous ordnance, for the following purposes:

"(1) Contractors * * * regularly employing explosives in the course of a legitimate business, with respect to explosives and explosive devices acquired, possessed, carried, or used in the course of such business.

" * * *

"(C) Upon investigation, the issuing authority shall issue a license or temporary permit only if all of the following apply:

"(1) The applicant is not otherwise prohibited by law from acquiring, having, carrying or using dangerous ordnance;

"(2) The applicant is age twenty-one or over, if he is a natural person;

"(3) It appears that the applicant has sufficient competence to safely acquire, possess, carry, or use the dangerous ordnance, and that proper precautions will be taken to protect the security of the dangerous ordnance and ensure the safety of persons and property;

burdens the health and safety of the community, R.C. 2923.18(D) Cf. *Curtis v. Cleveland* (1959), 170 Ohio St. 127, 10 O.O.2d 85, 163 N.E. 682. A total ban on blasting is not a "regulation" within the meaning of R.C. 2923.18.[3] The total elimination of blasting as a means of construction is therefore in conflict with this statute and consequently the ordinance is invalid. *Fondessy Enterprises, Inc., supra.*

■ But even if this ordinance were valid, a legislative enactment will not stand if it is demonstrated that the ordinance is in its application "arbitrary, capricious, and bears no reasonable relationship to the health, safety or general welfare of the community." *Pike v. Landskroner*, 53 Ohio App.3d at 63, 7 O.O.3d at 44, 371 N.E. at 580. A person attacking an ordinance must introduce sufficient evidence to demonstrate that this relationship does not exist. If such evidence is introduced, the municipality must also present evidence to support the validity of the ordinance on the basis of health, safety or general welfare or risk that the ordinance will be found unconstitutional. *Id.*

■ The Sewer District provides wastewater treatment and interceptor sewer facilities to the city of Cleveland and forty-one surrounding communities. On September 24, 1985, the Sewer District was ordered by the court of common pleas ("court order") to construct and place in service the Southwest Interceptor Sewer ("SWI"). This construction is necessary to eliminate overflow and discharge of untreated sewage into the environment. Pursuant to the court order and the terms and conditions of the federal grants, the

---

"(4) It appears that the dangerous ordnance will be lawfully acquired, possessed, carried, and used by the applicant for a legitimate purpose.

"(D) The license or temporary permit shall identify the person to whom it is issued, identify the dangerous ordnance involved and state the purposes for which the license or temporary permit is issued, state the expiration date, if any, and list such restrictions on the acquisition, possession, carriage, or use of the dangerous ordnance as the issuing authority considers advisable to protect the security of the dangerous ordnance and ensure the safety of persons and property.

"(E) A temporary permit shall be issued for the casual use of explosives and explosive devices, and other consumable dangerous ordnance, and shall expire within thirty days of its issuance. A license shall be issued for the regular use of consumable dangerous ordnance, or for any nonconsumable dangerous ordnance, which license need not specify an expiration date, but the issuing authority may specify such expiration date, not earlier than one year from the date of issuance, as it considers advisable in view of the nature of the dangerous ordnance and the purposes for which the license is issued.

"(F) The dangerous ordnance specified in a license or temporary permit may be obtained by the holder anywhere in the state. The holder of a license may use such dangerous ordnance anywhere in the state. The holder of a temporary permit may use such dangerous ordnance only within the territorial jurisdiction of the issuing authority."

**3.** For an example of regulation, see Brooklyn Ordinance No. 1987–26, which was repealed when the ordinance at issue was adopted.

construction contracts for the SWI must be initiated and completed within a specified timetable.

At the time this action was instituted SWI Contracts 1, 2, 3 and 4 were under construction. SWI Contract 4 included areas of construction within the city of Brooklyn. The next segment of the project, and the one affected by the ordinance, was SWI Contract 5. This contract requires the construction of an interceptor which necessitated the sinking of at least one access shaft to a depth of one hundred feet through rock in a non-residential area of the city of Brooklyn. Bids on Contract 5 were scheduled for March 15, 1988. On February 15, 1988, the city adopted Ordinance No. 1988–07, which totally prohibits blasting as a means of construction for any contract entered into after February 27, 1988.

Edward J. Walter, the city's seismologist, testified that previous to this ordinance the city had another ordinance which regulated blasting. That ordinance established standards to which the user of explosives within the city must adhere. For example, it regulated particle velocity and hours when blasting was permitted. It required contractors to maintain liability insurance, required detailed records of each detonation, and provided penalties for violators. Edwards testified that based on data he collected from previous detonations which involved SWI Contract 4, none of these blasts was of the magnitude that would cause even minor damage to homes. Ronald Connors, an adjuster who had personally inspected fifteen homes as a result of claims submitted alleging property damage from blasting during construction of SWI Contract 4, stated that he found no evidence of damage attributable to blasting. Thomas Novotny, a professional geophysicist, was retained to perform noise and vibration studies during construction of SWI Contract 4. He concluded that vibrations caused by blasting during construction of SWI Contract 4 were not capable of causing structural damage. Novotny posited that an absolute ban on blasting as a means of construction is totally unreasonable, especially since the city's previous ordinance adequately regulated blasting. Other testimony indicated that the total ban on blasting could delay completion of SWI contracts and raise the cost of construction of SWI Contract 5 by one million dollars.

The city did not proffer any evidence to support the validity of the ordinance. It introduced no evidence that a total ban was necessary for the preservation of the health, safety or general welfare of the community. Therefore, the trial court properly declared the ordinance invalid and unconstitutional on its face and in application. See *Pepper Pike, supra.*

*Judgment affirmed.*

NAHRA, P.J., and MITROVICH, J., concur.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.

PAUL H. MITROVICH, J., of the Court of Common Pleas of Lake County, sitting by assignment.