OPINION
These are appeals from the Delaware County Court of Common Pleas.
 APPELLATE PROCEDURE
This is the third appeal in this cause. Initially, the trial court concluded that it lacked jurisdiction due to the action of the township in denying the amended zone change application as being legislative rather than administrative. This Court reversed such conclusion and remanded for further proceedings. (Case No. 00CAH01002).
The trial court then heard evidence, with the decision being adverse to appellants. An appeal was taken in Case No. 01 CEA 06-018. As appellants filed a motion to vacate the decision, this Court granted a stay until such motion was decided. Again, the decision was not in favor of appellants and an appeal has been taken, being Case No. 01 CEA 10057. The stayed appeal and the last referenced appeal are now consolidated.
 FACTS OF THE CASE
J.D. Partnership and TR Partnership, as owners, in their amended application requested a zone change of 40.611 acres on the east side of Africa Road, Berlin Township, Delaware County from FR-1 (Farm Residential District) to PRD (Planned Residential Zoning District).
The amended application was referred to the Delaware County Regional Planning Commission (DCRPC) which held a public hearing and denied the amended application.
Next, the Berlin Township Zoning Commission (BZC) addressed the amended application, held a public hearing and denied the zone change.
The Berlin Township trustees then considered the application at a public hearing and also denied the requested zone change.
Appellants then filed an administrative appeal to the Delaware County Common Pleas Court along with prayers in declaratory judgment, injunctive relief and damages.
The trial court conducted a de novo evidentiary hearing and affirmed the decision of the trustees and as stated heretofore denied additional relief.
ASSIGNMENTS OF ERROR
CASE NO. 01 CEA 06-018
 I. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR BY FAILING TO HOLD THAT THE DECISION OF THE BOARD WAS ILLEGAL UNREASONABLE AND/OR CONTRARY TO THE TOWNSHIP ZONING RESOLUTION.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN HOLDING THAT THE 1989 RESOLUTION FOREVER LIMITS THE APPELLANT'S LAND TO BE DEVELOPED AT ONE UNIT PER ACRE.
 III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO RENDER FINDINGS OF FACT AND CONCLUSIONS OF LAW IN COMPLIANCE WITH OHIO LAW.
 IV. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR IN EXCLUDING PORTIONS OF THE EXPERT TESTIMONY OF WITNESSES, DAVID HARTT AND DAVID SHADE, ESQ.
ASSIGNMENTS OF ERROR
CASE NO. 01 CEA 10057
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT AND FOR ATTORNEYS FEES.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO CONSIDER ALL OF THE EVIDENCE BEFORE THE COURT BEFORE DETERMINING APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT AND FOR ATTORNEY'S FEES.
In considering the various Assignments of Error we must first determine the jurisdiction of the trial court.
Revised Code § 2506.03 requires that the Common Pleas Court hearing is confined to the transcript of the hearing conducted by the trustees and that additional evidence may be received to correct deficiencies in the transcript. In Grant v. Washington Township (1963), 1 Ohio App.2d 84, the Court of Appeals for the Second District determined that no jurisdiction rested with the Common Pleas Court without a transcript. Also, in Wickliffe Firefighters Association Local 1536 v. Wickliff
(1990), 66 Ohio App.3d 681, the court also found a lack of jurisdiction to proceed with a trial de novo without a transcript in an administrative proceeding.
However, in Crist v. Battle Run Fire District Board of Trustees
(1996), 115 Ohio App.3d 191, the court ruled that a trial de novo was required in the absence of a transcript. See also Powell v. Meigs LocalSchool District No. 502, (Sept. 8, 1993), Meigs App. No. 502, unreported, Ray v. Ohio Unemployment Board of Rev. (1993),85 Ohio App.3d 103.
In this case, as evidenced by the receipt of joint Exhibit 2, no sufficient transcript of the trustees' hearing exists.
We therefore determine that under R.C. § 2506.03(A)(1) and (5), the court appropriately conducted a de novo hearing and was possessed of statutory authority to receive such evidence.
We find further that the trial court was not limited to a consideration of the trustees' decision but also upon evidence received in the trial denovo to determine if such decision was unreasonable, arbitrary and not supported by a preponderance of reliable, probative and substantial evidence. R.C. § 2506.01 et. seq, 2506.04.
In Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570
the Supreme Court, while discussing R.C. § 119.12 rather than R.C. § 2506.01 et sec., provided guidelines as to these terms when it stated:
 (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.
 (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.
 (3) `Substantial' evidence with some weight; it must have importance and value.
The court, in considering the evidence before it, reviewed the deficiencies in the amended application found by the Regional Planning Commission, which was relied upon by the zoning board, and the trustees. Applicable portions from such recommendations are:
 1.) "If the proposed development is consistent in all respects with the purpose, intent and general standards of this zoning resolution."
 A final development plan must be submitted which meets all the criteria for approval under the zoning resolution at the time of zoning amendment. The revised development plan is still incomplete:
 a.) The landscaping plan in the text provides for buffers and trees in the yards, but there are no calculations for the amount of landscaping needed in relation to vehicular use areas.
 b.) No renderings of landscape cross sections or entrance features are included.
c.) No sign plan is included.
 d.) The architectural design criteria do not include structural renderings.
 e.) The County Sanitary Engineer has not approved the concept of an additional force main and lift station, therefore, engineering feasibility is not shown for the plan as submitted. If the sewer can be made to gravity flow to the 24" main, there is adequate capacity in the 24" sewer to service the development without affecting commercial capacity in the 12" force main. The developer's engineer has agreed to make improvements to the lift stations at Cheshire and Peachblow Roads. (corrected by fax 4/21/99).
 f.) The relationship of the development to the existing and probable uses is not fully demonstrated, especially in light of the applicant's 123 acres of adjacent future development lands.
 g.) The County Engineer has indicated that a left turn lane will have to be constructed in Africa Road at the entrance of this development. No turn lane is shown on the development plan. (corrected by fax 4/21/99).
 h.) No traffic study has been submitted. The township may wish to see how this parcel relates to the applicant's additional 123 adjacent acres of future development.
 i.) 50' rights of way are shown where 60' is required. (corrected by fax 4/21/99).
 j.) Lot 2 destroys an existing tree line. This is a natural feature, to be retained via PRD (Art. 11.01 and 23.03D) (lot 2 eliminated by fax 4/21/99).
 k.) The high-pressure gas main easement touches the building envelope on lots 6, 7, 67, and 68. These lots seem imprudent in case of a rupture. (adjusted, see fax 4/21/99).
 2.) "If the proposed development is in conformity with the comprehensive plan or portion thereof as it may apply."
 a.) The original Berlin Township Land Use Plan (3/10/88) recommends this area for residential use at one unit per acre. The request is for 1.69 per acre.
 b.) Because sanitary sewer service was subsequently provided to this area the township should re-evaluate its comprehensive plan recommendations. The township has begun this process.
 c.) The Delaware County 1993 Regional Land Use Plan for this area shows the land to contain areas that are suitable for development, areas which are unsuitable for development, and areas which are critical resource management areas, but does not recommend uses or densities. It states several policies:
 1.) "It shall be the policy of the Central Planning Area to discourage piecemeal development of unrelated, isolated single use developments stand alone structures." (Page 1, Central Area Master Plan DCRPC 1993 Master Plan)."
This application may be categorized as a piecemeal development, which needs to be studied in its larger context.
 2.) Inside sewer service districts, suburban pattern development will predominate, but alternatives to this pattern should be initiated.
 a.) Existing settlements should be, expanded to become villages. (Cheshire) Not applicable to this request.
 b.) All developments should be planned developments, permitting townships to participate with the county Engineer and the DCRPC to review, through zoning requirements and development standards, proposed areas, subdivision plans, and to have opportunity to achieve thoroughfare planning objectives, appropriate land use mix, and clustering to preserve critical resources, historical resources, and special features of sites."
Partially added by this request.
 c.) For proposed land uses deemed appropriate according to the Central Planning Area's balanced land development pattern and development suitability, it shall be the policy of the central Planning area to consider the compatibility of proposed land uses with existing land uses." Partially achieved by this request.
 3.) "If the proposed development advances the general welfare of the township and the immediate vicinity."
 a.) At this time, the development plan proposed does not advance the general welfare of the township and the immediate vicinity for the reasons and deficiencies stated above.
Such deficiency findings are considered in the court's opinion at pages 4 and 5 and are as follows:
15. Those reported deficiencies included:
 (a) "The revised development plan is incomplete" or inappropriate in eleven respects;
 (b) The proposed development is not in conformity with the Berlin Township Comprehensive Plan, because
 (i) The Berlin Township plan calls for residential use at no more than one unit per acre, and this application requests 1.69 units per acre; and
 (ii) The equally applicable Delaware County Regional Land Use Plan discourages piecemeal development with stand-alone or isolated single use developments like this proposal; and
 (iii) "The development plan proposed does not advance the general welfare of the township and the immediate vicinity for the reasons and deficiencies" which the report recites.
In 1998 the township adopted a comprehensive plan (a land use plan) under R.C. Chapter 519. Following this, on January 1, 1989, it established zoning districts for the township, effectively classifying all undeveloped land as F-1 but taking into consideration a low or high density map legend as a guide to the future of the township.
Section 7.03(A) (FR-1) limited density to one single family dwelling per one acre parcel, tract or lot.
Appellants' land was classified as FR-1.
However, the Zoning Code was modified to provide for Planned Residential Districts (PRD) in Article XI pursuant to R.C. §519.021. By this action, the Comprehensive Plan and potential density was significantly altered as were the initial overall zoning concepts.
This is the classification for which appellants applied.
Section 11.02 of Article XI states:
 Section 11.02 — APPLICATION: The provisions of this article of the Zoning Resolution shall apply to all lands of the township, regardless of the size. The owner of any parcel may elect to submit an application for a change in the zoning under the provisions of this article provided that the planned densities or size of the tract do not exceed the permitted densities or acreage set forth in Articles VII, VIII, and IX of this resolution. Central water and sewer systems are a requirement of this district.
Articles VII, VIII, and IX in section 7.03 (A) each state "single family dwellings (limited to one (1) single family dwelling per one (1) acre parcel, tract or lot.)"
Article 7.06 (A) states:
 A. Lot Area — No parcel of land in this district shall be used for residential purpose which has an area of less than one (1) net acre forty-three thousand five-hundred sixty (43,560 square feet), excluding all road right-of-ways. All other uses in this district shall have such lot area prescribed by the article permitting the use or as prescribed by the Board of Zoning Appeals as a condition of said use.
Article 8.06 (A) provides:
 A. Lot Area — Residential lots which are served with an approved central water and sewer system serving all lots may be developed for such use if they have a lot net area of not less than twenty-thousand (20,000) square feet, excluding all road easements. All other parcels, not so serviced, shall contain the lot areas prescribed by the provisions of Article VII of this Zoning Resolution.
Article 9.07 (A) also states:
 A. Lot Area — A minimum of twenty-thousand (20,000) net square feet, excluding all road right-of ways, per dwelling unit shall be required. All other uses in this district shall have such lot area prescribed by the article permitting the use or as prescribed by the Board of Zoning Appeals as a condition of said use.
Section 11.07 (A) of the PRD Districts recites:
 A. Intensity of Use — The maximum density shall be two (2) dwelling units per gross acre within the area to be developed, unless the physical boundaries of land or existing developments adjacent thereto on adjoining lands establish an atmosphere inconsistent with the above maximum density of two (2) dwelling units per gross acre. Increased densities may be approved by the Berlin Township Zoning Commission and Township Trustees if it is determined that any of the following conditions exist:
 1. The property is directly adjacent and easily accessible to major thoroughfares.
 2. The developer provides parks or public open space as part of the design of the development.
 3. Pedestrian or bike trails are provided as part of the design of the development.
 4. Natural or historic areas are retained and protected.
 The Zoning Commission and Township Trustees may grant zoning incentives of up to one-half (½) unit per gross acre for each of the above standards of quality found to exist; however, the total density for the entire area of the development shall not exceed four (4) units per gross acre.
 For purpose of development within the Planned Residential District in Berlin Township, the maximum density for development shall be as follows:
TYPE OF DWELLING Maximum Dwelling Units on Any Single Acre
Single Family 2 (plus incentive units)
 Two Family Units 6
Two-story Apartments 6
Multi-family Units 6
The trial court, after the de novo evidence and consideration of the Comprehensive Plan, land use map, zoning classifications of 1989 as modified effective 1994 and 1995, the Regional Planning denial reasons, as affirmed by the Zoning Board and the trustees, along with the applicants' amended application and drew the following conclusions:
 1. Pursuant to Sections 7.03 and 7.06 of the Berlin Township Zoning Resolution, the FR-I Zoning District requires a minimum one acre lot for any residential unit, and permits only one residential unit per acre for any development parcel. Pursuant to Sections 11.02 and 11.07 of the Berlin Township Zoning Resolution, a PRD Zoning District may permit two or more residential units per acre for a development parcel, "provided that the planned densities or size of the tract do not exceed the permitted densities or acreage set forth" for the applicable Zoning Resolution District.
 2. By its terms, Sections 11.02 precludes rezoning from FR-I to PRD, if the proposed PRD provides greater residential density than one residential unit per acre in an area where the township's zoning map designates a maximum residence density of no more than one residence unit per acre. Any contrary reading of Section 11.02 would permit the trustees to approve a PRD without regard for the surrounding area or the township's general land use plan.
 3. By its terms, Section 11.06(C)(2) precludes rezoning from FR-I to PRD if the proposed PRD fails to comply with the township's "comprehensive plan." The township's zoning map and its notations are part of that comprehensive plan. The map's notations expressly limit the residential unit density for the area where plaintiffs propose their PRD to no more than one residential unit per acre.
 4. Though the Trustees expressly considered and affirmatively denied the plaintiff's amended application, the Trustees lacked authority to approve the plaintiffs amended application BZC-098-009 without violating Section 11.02 and/or Section 11.06(C)(2).
 5. If the Trustees had authority to approve the plaintiffs' amended application, as they apparently believed they could, they had sufficient grounds to deny that application for one or more of the reasons that the DCRPC staff recommended its disapproval, and because the BZC and the DCRPC recommended its rejection.
 6. The Trustees' decision to deny the plaintiffs' amended application was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.
 I., II.
With this background we shall now consider Assignments of Error one and two simultaneously as each address the primary issue as to the presence or absence of a density limitation of one residence per acre as the Regional Planning, Zoning Board, Trustees and the Common Pleas Court determined.
Each of these decisions is predicated upon the initial land use plan of 1989 and the zoning code which followed thereafter.
There is no question that such documents speak in these terms with the Zoning Resolution having been submitted to and approved by the voters.
The trial court specifically determined that the comprehensive plan (paragraph 3) precludes a zone change from FR-1 to PRD if the density exceeds such one residence per acre.
However, the trustees and voters in approving the Zoning Resolution which created the PRD classification, specifically state that it shall apply to all lands in the township regardless of size. (Sec. 11.02) and provides for densities exceeding one unit per acre. Therefore, if a PRD application is approved, this density limitation becomes inapplicable and, as stated in R.C. § 519.021:
 ". . . within that development property is subject to the planned-unit development regulations and not to any other zoning regulations."
Section 11.07 A then provides for a density of two dwelling units per gross acre with increased densities as approved by the Zoning Commission if any one of the four listed conditions applied (see p. 11 hereof). In addition, such Article provides incentives which can increase the density up to four units per acre.
Section 11.02 does recite that:
 ["the planned densities or size of the tract do not exceed the permitted densities or acreage set forth in Articles VII, VIII and IX of this resolution."]
But in examining such referenced sections VII, VIII and IX, we find that each provides in varying language that all other uses shall have such lot area prescribed by the Article permitting such use, which Article in the sub judice is 11.02
This Court must consider the Zoning Resolution as amended by the adoption of the PRD as a whole as the trustees and voters have selected and approved the specific language contained therein. The trial court, by limiting the density to one residence per acre in reliance upon the initial Comprehensive Plan and the Zoning Resolution to the exclusion of the PRD sections has eliminated the latter from the approved amended Zoning Resolution at least to the extent of the permitted density.
The trustees, and the court are prohibited from now choosing to change the language which, as stated, has been approved by such Board and the voters, even though the Planning Commission, Zoning Board and Trustees may have second thoughts as to the future development of the township lands.
This Court did not choose such language, nor are we altering the content thereof.
We are guided by the Ohio Supreme Court in Saunders, et. al. v. ClarkCounty Zoning Department (1981), 66 Ohio St.2d 259 which stated:
 . . . restrictions on use of real property by ordinance, resolution or statute must be strictly construed and that scope of the restrictions cannot be extended to include limitations not clearly prescribed.
In referencing such language we are mindful that it was a split decision. The differences, however, were based on other considerations. Judge Brown also stated the following:
 (1) All zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. In re University Circle Inc. (1978), 56 Ohio St.2d 180, 184, 383 N.E.2d 139; Pepper Pike v. Landskroner (1977), 53 Ohio App.2d 63, 76, 371 N.E.2d 579; 3 Anderson, American Law of Zoning (2d Ed.) 4, Section 16.02. Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. Davis v. Miller (1955), 163 Ohio St. 91, 95, 126 N.E.2d 49 (Taft, J., concurring); State, ex rel. Ice Fuel Co., v. Kreuzweiser (1929), 120 Ohio St. 352, 166 N.E. 228; State, ex rel. Moore Oil, v. Dauben (1919), 99 Ohio St. 406, 124 N.E. 232, paragraph one of the syllabus.
As this Court held in Vasu Communications, Inc. v. Planning Commissionof City of Mansfield (Oct. 26, 1999), Richland App. No. 99CA4, unreported:
 Our standard for reviewing a decision of a trial court in an administrative appeal pursuant to R.C. Chapter 2506 is to review the record and the legal determinations of the common pleas court to determine whether as a matter of law the trial court's decision is supported by a preponderance of substantial, reliable and probative evidence. Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202, 207, 389 N.E.2d 1113. Under R.C. 2506.04, we review the judgment of the trial court only on questions of law which does not include the same extensive power to weigh the preponderance of the substantial, reliable and probative evidence as is granted to the trial court. Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848. Therefore, pursuant to R.C. 2506.04, we must affirm the judgment entered by the trial court unless we find the judgment is, as a matter of law, not supported by a preponderance of reliable, probative and substantial evidence. Id. This determination is tantamount to evaluating whether a court below abused its discretion. Id. at n. 4. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 450 N.E.2d 1140.
We find that the trial court and the trustees, as to permitted density in a PRD district, did not follow the language of Sec. 11.07 and therefore such decisions were not supported, as a matter of law, by a preponderance of reliable, probative and substantial evidence.
We determine that appellants 40.66 acres are not bound by the density of one residence per acre but that the 1.69 units per acre are well within the PRD specifications and appellants are not disqualified by such density.
Further, the trial court stated that the amended application violated the eleven objections of the Regional Planning Commission.
However, the testimony of Mr. Laurien, Director (T. at p. 262), stated that five of these had been corrected.
The objection raised that piecemeal development or stand-alone or isolated single use developments such as this one also does not conform to Sec. 11.07 as such section specifically applies to all FR-1 parcels. By following this reasoning, an owner would be denied the highest and best use of its property until other development projects reached its land so that it would not be a stand-alone project. This contradicts Sec. 11.07.
The evidence presented indicated that adequate sewer facilities existed with an agreed lift station.
A landscaping plan with signage was provided. (Plaintiff's Ex. 2).
Article 11.06 (B) (2) does not require structural renderings.
No traffic study was required. (See O.D.O.T. letter)
Also, since the PRD classification applied, by its language, to all township land, the Township Planning Commission, Zoning Board and trustees retained the authority to review any application in the future and could not therefore, as a basis of denial, include or require that appellants provide data on other lands owned or controlled by them.
We therefore sustain the first and second Assignments of Error and determine that appellants amended application conformed to the requirements of a P.R.D. district as defined.
It therefore is unnecessary to rule upon the third or fourth Assignments of Error in Case No. CEA 06-018 nor the first Assignment of Error in Case No. 01 CEA 10057.
 II
The second Assignment of Error in Case No. 01 CEA 10057 concerns two separate aspects, to wit: non-consideration by the trial court as to all of the evidence and the request for attorney fees.
As to the first portion, no ruling is necessary due to this Court's findings with respect to the first and second Assignments of Error in Case No. 01 CEA 06-018.
In the trial court's decision of October 15, 2001 the court stated:
 Plaintiff failed to file a motion for R.C. 2323.51
sanctions within the statutorily allowable 21 days after the judgment See R.C. 2323.51(B)(1). Moreover, the Plaintiff fails to describe any defense conduct in either case which satisfies the statutory definition for "frivolous conduct" in R.C.2323.51(A)(2). The defendants positions in each case were "warranted under existing law" or they could "be supported by a good faith argument for an extension, modification, or reversal of existing law."
 On its face, this Court's order regarding costs in case no. 99CVH06196 relates solely to case no. 99CVH06196. Indeed, this court's. converse order in no. 99CVF07274 allowed the defendants to recover their costs from the plaintiffs there. (see-page 14, ¶ D of that judgment). Further, the order that defendant may recover "the costs of this action" in case no. 99CVH06196. refers to traditional court costs recoverable under Civ.R. 54(D), which do not include attorney fees. Williamson v. Ameritech Corp. 81 Ohio St.3d '342, 691 N.E.2d 288 (1998); Muze v. Mayfield, 61 Ohio St.3d 173, 573 N.E.2d 1078 (1991); Sturm v. Sturm, 63 Ohio St.3d 671, 590 N.E.2d 1214 (1992).
We find no abuse of discretion in making these findings and therefore reject this portion of the second Assignment of Error as to attorney fees in Case No. 01 CEA 10057.
This cause is reversed and remanded for proceedings consistent herewith.
By: BOGGINS, J. HOFFMAN, P.J. and FARMER, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the decision of the Delaware County Common Pleas Court is reversed and remanded. Costs to appellee.