This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Timothy Ashley ("Ashley"), appeals from the decision of the Summit County Court of Common Pleas, which granted summary judgment to Appellee, Owners Insurance Co. ("Owners"). We affirm.
 I. {¶ 2} On August 13, 2001, Ashley was involved in an automobile accident in Cuyahoga Falls, Ohio. On November 20, 2001, Ashley filed a complaint in the Summit County Court of Common Pleas, seeking, among other things, a declaration that he is entitled to underinsured motorists ("UIM") coverage under a commercial general liability ("CGL") insurance policy issued to Ashley by Owners.[1] Owners filed a counterclaim for declaratory judgment, seeking declarations that Ashley's injuries did not occur within the course and scope of his employment, that the CGL policy is not an automobile or motor vehicle liability policy of insurance, and that Ashley is not entitled to recover UIM coverage under the policy.
 {¶ 3} On March 29, 2002, Owners filed a motion for summary judgment. Owners argued (1) the CGL policy is not an automobile or motor vehicle liability policy of insurance; and (2) Ashley was not operating his vehicle in the course and scope of his business, and, therefore, he is not an insured under the policy.
 {¶ 4} Ashley filed a brief in opposition and a cross-motion for summary judgment. The trial court denied Ashley's motion for summary judgment and granted Owners' motion for summary judgment, finding that Ashley is not an insured under the policy because the policy contains a course and scope of employment restriction. On November 20, 2002, the trial court amended its judgment entry to include Civ.R. 54(B) language that "there is no just reason for delay." This appeal followed.
 II. Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT, TIMOTHY ASHLEY, BY ENTERING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT-APPELLEE, OWNERS INSURANCE COMPANY, UNDER THE CGL POLICY."
 ¶ 5 In his lone assignment of error, Ashley challenges the grant of summary judgment to Owners. He asserts that he is an insured under the terms of the policy. He further asserts that the CGL policy is an automobile or motor vehicle policy of insurance, and, as such, UIM coverage arises by operation of law because there was not a valid offer and rejection of the coverage as required by R.C. 3937.18. We find that the CGL policy is not an automobile or motor vehicle liability policy, and therefore, overrule the assignment the error.
 {¶ 6} As a preliminary matter, we note that an appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 7} Pursuant to Civil Rule 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327.
 {¶ 8} To prevail on a motion for summary judgment, the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293-294. Only after the movant satisfies this initial burden, must the nonmoving party then present evidence that some issue of material fact remains for the trial court to resolve. Id. "[A] moving party does not discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. The assertion must be backed by some evidence of the type listed in Civ.R. 56(C) which affirmatively shows that the nonmoving party has no evidence to support that party's claims." (Emphasis sic.) Id. at 293.
 {¶ 9} Civ.R. 56(C) provides an exclusive list of materials, which the trial court may consider on a motion for summary judgment. Spier v.American Univ. of the Carribean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, and the pleadings. Civ.R. 56(C).
 {¶ 10} In support of its arguments, Owners relied upon a copy of the CGL policy. No other evidentiary materials were attached to the motion or referenced therein. We begin with Ashley's argument that summary judgment was improper because he is an insured under the CGL policy. Owners argued that "there have been no allegations that the plaintiff was operating his vehicle in the course and scope of his business or even that he was conducting business [at] the time of the accident." However, Owners failed to point to any evidence of the kind listed in Civ.R. 56 to adequately support the claim that Ashley was not in the course and scope of his business at the time of the accident. We therefore conclude that Owners failed to meet its initial burden under Dresher.
 {¶ 11} Ashley was required to present evidence that some issue of material fact remained for the trial court only after Owners had satisfied its initial burden under Dresher. As Owners failed to meet its initial Dresher burden, Ashley had no burden to produce evidence to show that there was a genuine issue of material fact as to whether Ashley was in the course and scope of his business at the time of the accident. Summary judgment was therefore improperly granted upon this basis.
 {¶ 12} However, an appellate court must affirm summary judgment if there were any grounds to support it. McKay v. Cutlip (1992),80 Ohio App.3d 487, 491. We must, therefore, examine the other grounds
that Owners raised in support of its motion for summary judgment. Owners also argued that the CGL policy is not an automobile or motor vehicle liability policy and therefore not subject to the requirement of former R.C. 3937.18 that UIM coverage be offered with such coverage or it is imposed by operation of law.
 {¶ 13} When a statute's language is plain and unambiguous, this Court applies the statute as written and makes no further inquiry either into the legislative intent or the consequences of the trial court's construction. State v. Hurd (2000), 89 Ohio St.3d 616, 618. A statute cannot be extended by construction to persons or things not falling within its terms, although they may appear to be within the reason and spirit of the statute. Pepper Pike v. Landskroner (1977), 53 Ohio App.2d 63,76.
 {¶ 14} "For the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins.Group of Cos. (1998), 82 Ohio St.3d 281, syllabus. The accident in this case occurred on August 13, 2001. Owners issued the CGL policy on January 1, 2001, and the policy was in effect for a period of one year. Therefore, we must examine the version of R.C. 3937.18 that was in effect on January 1, 2001.
 {¶ 15} R.C. 3937.18 has been amended multiple times over the past few years. The version, as amended by H.B. 261 effective September 3, 1997, S.B. 57, effective November 2, 1999, and S.B. 267, effective September 21, 2000, applies to the case at bar. That version provides, in pertinent part:
 "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless [UM/UIM coverages] are offered to persons insured under the policy due to bodily injury or death suffered by such insureds[.]"
 {¶ 16} Thus, pursuant to former R.C. 3937.18, Owners was required to offer UIM coverage only if the policy in question was an automobile or motor vehicle liability policy. A named insured may reject UIM coverage, or may accept a reduction in policy limits; however, such a rejection must be in writing and signed by the named insured. SeeGyoriv. Johnson Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565;Linko v. Indemn. Ins. Co. (2000), 90 Ohio St.3d 445. "When UM coverage is not part of a policy, such coverage is created by operation of law unless the insurer expressly offers it in writing and the insured expressly rejects it in writing before the time that the coverage begins." Schumacher v. Kreiner (2000), 88 Ohio St.3d 358, 359-360, citing former R.C. 3937.18 and Gyori, supra.
 {¶ 17} H.B. 261 amended R.C. 3937.18 to include a definition of "automobile liability or motor vehicle liability policy of insurance." The statute provides that an "automobile liability or motor vehicle liability policy of insurance" is:
 "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance; [or]
 "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section." R.C. 3937.18(L).
 {¶ 18} Proof of financial responsibility, as defined in R.C.4509.01, means:
 "Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident." R.C. 4509.01(K).
 {¶ 19} The plain meaning of these statutes provides that for an insurance policy to be considered an automobile liability or motor vehicle liability insurance policy in a post-H.B. 261 context, the policy must either (1) serve as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy, or (2) be an umbrella liability insurance policy written in excess over a policy that serves as proof of financial responsibility. SeeGilcreast-Hillv. Ohio Farmers Ins. Co ., 9th Dist. No. 20983, 2002-Ohio-4524, at ¶ 19, appeal not allowed, 98 Ohio St.3d 1422, 2003-Ohio-259 ; Mazzav. Am. Continental Ins. Co ., 9th Dist. No. 21192, 2003-Ohio-360, at ¶ 55. Neither party contends that the CGL policy is an umbrella insurance policy; rather the parties dispute whether the policy meets the definition provided in R.C. 3937.18(L)(1).
 {¶ 20} The CGL policy contains the following provisions:
"SECTION I — COVERAGES
"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY.
"***
"2. Exclusions.
"This insurance does not apply to:
"***
 "g. `Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading and unloading[.]'
This exclusion does not apply to:
"***
 (3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured;
"***
 "(5) `Bodily injury' or `property damage' arising out of operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of `mobile equipment[.]'"
 {¶ 21} Paragraphs f.(2) and f.(3) of the definition of "mobile equipment" state:
 "f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.
 "However, self-propelled vehicles with the following types of permanently attached equipment are not `mobile equipment' but will be considered `autos':
"***
 "(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise and lower workers; and
 "(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."
 {¶ 22} Ashley asserts that this policy is a motor vehicle liability policy of insurance due to the inclusion of the "parking exception" and the exception for certain mobile equipment contained in paragraphs f.(2) and f.(3) quoted above. Ashley cites Selander v. ErieIns. Group (1999), 85 Ohio St.3d 541, and Davidson v. Motorist Mut. Ins.Co. (2001), 91 Ohio St.3d 262, for the proposition that because the policy provides motor vehicle liability coverage in limited form, the policy is a motor vehicle liability policy. Ashley also argues that the policy provides proof of financial responsibility and therefore meets the statutory definition of motor vehicle liability policy of insurance. Ashley argues that because the policy is a motor vehicle liability policy of insurance, UIM coverage must be offered, otherwise such coverage arises by operation of law, pursuant to former R.C. 3937.18.
 {¶ 23} In Selander, the Ohio Supreme Court held that "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided." Selander,85 Ohio St.3d at 544. Selander involved a general business liability policy, which generally excluded coverage for claims arising out of the use of motor vehicles. However, the policy expressly provided limited coverage for those claims arising out of the use of hired or non-owned automobiles used in the insured's business. The Supreme Court found that because the policy provided liability coverage for non-owned and hired motor vehicles, it was an automobile or motor vehicle liability policy of insurance.
 {¶ 24} In Davidson, the Supreme Court distinguished Selander, noting that the Court "never intended Selander to be used to convert every homeowner's policy into a motor vehicle liability policy whenever incidental coverage is afforded for some specified type of motorized vehicle." Davidson, 91 Ohio St.3d at 268. The policy in Davidson was a homeowner's policy, which did not include general coverage for liability arising out of the use of motor vehicles. Instead, the policy provided only incidental coverage to a narrow class of motorized vehicles that were not subject to motor vehicle registration laws and were designed to be used off-road or around the property of the insured.
 {¶ 25} Both Selander and Davidson applied a pre-H.B. 261 version of R.C. 3937.18. As previously noted, H.B. 261 amended former R.C. 3937.18
to include a specific definition of motor vehicle liability policy of insurance. We therefore find Ashley's reliance on Selander and Davidson to be misplaced.
 {¶ 26} This Court has previously interpreted the post-H.B. 261 version of R.C. 3937.18 and parking exceptions. See Gilcreast-Hill,2002-Ohio-4524 ; Mazza, 2003-Ohio-360 . In Gilcreast-Hill, this Court explained that, in the context of a parking exception, "[t]he phrase `not owned by or rented or loaned to you or the insured' does not `specifically identify' autos pursuant to the definition of automobile or motor vehicle liability [policy of insurance]." Gilcreast-Hill, at ¶ 28. We determined that "[t]he policy cannot serve as proof of financial responsibility for `owners or operators of the motor vehiclesspecifically identified in the policy,' if the policy does not specifically identify any motor vehicles." (Emphasis sic.) Id.
 {¶ 27} Ashley argues that our decisions in Gilcreast-Hill and Mazza are distinguishable because the policies in those cases did not identify specific types of motor vehicles, and the CGL policy in this case identifies specific types of autos in paragraphs f.(2) and f.(3) of the definition of mobile equipment. Just as the phrase "not owned by or rented or loaned to you or the insured" does not specifically identify autos pursuant to the definition of automobile or motor vehicle liability policy of insurance, the CGL policy's general description of types of mobile equipment contained in paragraphs f.(2) and f.(3), as previously quoted, does not specifically identify autos either.
 {¶ 28} The CGL policy does not specifically identify any vehicles; it merely refers to general types and categories of vehicles and mobile equipment. Accordingly, the policy does not serve as proof of financial responsibility for owners or operators of the motor vehicles specifically identified in the policy because the policy does not specifically identify any motor vehicles. SeeGilcreast-Hill, supra, at ¶ 28; Ryan v. Smith, 3d Dist. No. 3-02-17, 2002-Ohio-5581, at ¶ 11; Werstler v. Westfield Ins. Co., 5th Dist. No. 2002CA00227,2003-Ohio-1715, at ¶ 35; Allen v. Transportation Ins. Co., 10th Dist. No. 02AP-49, 2002-Ohio-6449, at ¶ 36-37. Therefore, the policy is not an automobile or motor vehicle liability policy of insurance, and former R.C. 3937.18 does not apply.
 {¶ 29} Summary judgment was properly granted to Owners because the CGL policy is not an automobile or motor vehicle liability policy of insurance. The assignment of error is overruled.
 III. {¶ 30} Having overruled the assignment of error, we affirm the judgment of the Summit County Court of Common Pleas.
WHITMORE, J. CONCURS
CARR, J. CONCURS IN JUDGMENT ONLY.
[1] There were many other claims, counterclaims, and crossclaims between the various parties in the case. However, this appeal concerns only the claims between Ashley and Owners, and, therefore, we recite only the facts relevant to these claims.